**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIKE DOBINA, Individually and on Behalf of All Others Similarly Situated,<br><br>                                  Plaintiff,<br><br>v.<br><br>WEATHERFORD INTERNATIONAL LTD., BERNARD J. DUROC-DANNER, ANDREW P. BECNEL, JESSICA ABARCA and CHARLES E. GEER, JR.,<br><br>                                  Defendants. | Electronically Filed<br><br>Civil Action No. 11-CV-1646-DLC<br><br>(ECF Case) |

**MEMORANDUM OF LAW IN SUPPORT OF AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S <u>SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL</u>**

American Federation of Musicians and Employers' Pension Fund ("AFME") respectfully submits this memorandum of law in support of its Motion for: (i) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (ii) approval of its selection of Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as lead counsel; and (iii) approval of its selection of the Law Offices of Curtis V. Trinko, LLP as liaison counsel.

## I. PRELIMINARY STATEMENT

Presently pending in this district is a securities class action lawsuit brought on behalf of all purchasers of Weatherford International Ltd. ("Weatherford" or the "Company") common stock between April 25, 2007 and March 1, 2011 (the "Class Period") against Weatherford and certain of its officers and directors for violating the Securities Exchange Act of 1934 (the "Exchange Act").[1]

Having suffered losses totaling approximately $3,978,622 on a first-in, first-out ("FIFO") basis, and $3,555,477 on a last-in, first-out ("LIFO") basis as a result of its transactions in Weatherford common stock during the Class Period, AFME believes it has suffered the largest financial loss of any movant seeking appointment as lead plaintiff in this matter. As the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Procedure ("Rule 23"), AFME believes it is entitled to appointment as lead

---

[1] A related securities class action lawsuit captioned *Kanchanapoom v. Weatherford International Ltd., et al.,* No. 11-CV-1895, is currently pending in the Central District of California. The *Kanchanapoom* action asserts Exchange Act claims over an identical class period, between April 25, 2007 and March 1, 2011. On May 2, 2011, defendants filed a motion before the United States Judicial Panel on Multidistrict Litigation seeking to transfer *Kanchanapoom* and *Dobina* to the Southern District of Texas. *See In re Weatherford Int'l Ltd., Sec. and Der. Litig.*, MDL No. 2255, Dkt. No. 1-1 (J.M.D.L. filed May 2, 2011).

plaintiff.[2]  Further, AFME respectfully requests the Court approve its selection of lead and liaison counsel.  *See* § III.C, *infra*;  *Kaplan v. Gelfond*, 240 F.R.D. 88, 96 (S.D.N.Y. 2007) ("the PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval") (citing 15 U.S.C. § 78u-4(a)(3)(B)(v)).

## II.    FACTUAL BACKGROUND

Weatherford is a Swiss corporation that provides equipment and services used in the drilling, evaluation, completion, production, and intervention of oil and natural gas wells. The Company currently has approximately 55,000 employees and conducts operations in more than 100 countries. The Company's common shares trade on the NYSE under the ticker "WFT."

The Class Period begins on April 25, 2007 to coincide with Weatherford's announcement of its financial results for the first quarter of 2007.  In this announcement, the Company reported quarterly net income of $284.2 million resulting in earnings of $0.82 per diluted share, a 44% improvement over the same quarter of 2006.  With respect to revenue, the Company stated that the results reflected "the highest level of quarterly revenues in the company's history."  Weatherford continued to post strong net income through the end of Fiscal Year 2008 and reported record breaking quarterly revenue figures for each quarter in 2008.

During this period of purported historic performance, serious problems with the Company's operations were beginning to surface.  Specifically, beginning in 2007 the Company started to exceed its capital expenditure ("capex") projections despite announcing upward revisions of estimated capex costs nearly every quarter during the Class Period.  For example, during the Company's July 2007 earnings call, Weatherford announced expected capex of $1.2 billion for

---

[2]    AFME has submitted a sworn certification signed by Maureen B. Killkelly, its Executive Director, demonstrating its desire to serve as lead plaintiff in this action and its understanding of the attendant duties and obligations of serving as such.  *See* Declaration of Curtis V. Trinko in Support of American Federation of Musicians and Employers' Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel ("Trinko Decl.") at Ex. A.

2007—later revising its projections to $1.4 billion in October 2007. Eventually, the Company reported 2007 total capex of $1.6 billion, a 33% increase from the originally budgeted amount. In 2008, the Company announced initial 2008 capex projections of $1.8 billion. Again, Weatherford revised its projections, and ultimately recorded 2008 capital expenditures of $2.3 billion—missing its projection by $500 million, approximately 27% over budget.

In Weatherford's January 2009 earnings call, the Company announced that it was reducing capex for 2009 to "$1.2 billion or less." The Company also assured investors that it was "monitoring capex commitments" and "[could] adjust expenditures down or up in 130 days response time as required by the economic environment." A few months later, on April 20, 2009, the Company increased its 2009 capex estimate from $1.2 billion to $1.4 billion, a 16% increase over the initially budgeted amount.

The disclosure partially corrected Weatherford's prior assurances about its ability to monitor capex and more broadly suggested that management did not have a grasp on the Company's operations. As a result of the partial corrective disclosure, the Company's stock price declined approximately 4% over a single trading day to close at $14.17 on April 20, 2009. On January 26, 2010, the Company admitted that it again had been unable to meet its revised capex projections and that it expended $1.5 billion on capex during FY2009, 25% over the initial estimate. In response, Weatherford's stock declined from a close of $17.73 per share on January 25, 2010, to close at $16.39 per share on January 26, 2010. This loss represented a single-day decline of nearly 8%.

Then, on March 1, 2011, Weatherford issued a press release announcing that it was restating its previously reported financial results for the years ended December 31, 2007, 2008, and 2009 and the first three quarters of 2010. Weatherford also cautioned investors not to rely on the restated reports. According to the Company's press release, the restatement was necessary to correct "errors in [the Company's] accounting for income taxes." Specifically, Weatherford reduced its previously reported net income by approximately $500 million—of which $460 million "relate[d] to an error in determining the tax consequences of intercompany amounts over multiple years."

3

The March 1, 2011 announcement caused a 10% drop in the Company's stock price. In response, analysts from Weeden & Co., LP indicated that "[t]he income tax issue is likely the most recent manifestation of a de-centralized management structure that was ill-equipped to handle rapid international expansion."[3] The analysts also noted that "[p]reviously, insufficient communication between corporate and the regional offices led to capital spending that consistently exceeded budget"—linking the previous capex issues to the restatement. Shortly thereafter, on March 15, 2011, Weatherford suddenly announced that Charles Geer, its Principal Accounting Officer and one of the defendants named in this case, was resigning.

## III.   ARGUMENT

### A.   The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedures for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See* 15 U.S.C. § 78u-4(a).

First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Third, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of

---

[3]   Weeden & Co. LP, *Weatherford International Ltd: A Financial Restatement is on Tap*, March 2, 2011.

class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice…;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Kaplan*, 240 F.R.D. at 92.

Here, *Dobina v. Weatherford International Ltd.,* Case No. 11-cv-1646-DLC was filed on March 9, 2011. Notice of the *Dobina* action was published on *Business Wire* on March 10, 2011. *See* Trinko Decl., Ex. C. Thus, the time period in which class members may move to be appointed lead plaintiff in this case expires on May 9, 2011.[4] *See* 15 U.S.C. § 78u-4(a)(3)(A). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, AFME timely moves this Court to be appointed lead plaintiff on behalf of all members of the class. *See Kaplan*, 240 F.R.D. at 92. In addition, AFME has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See* Trinko Decl., Exs. G & H. Accordingly, AFME satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff.

---

[4]   Counsel filing the *Dobina* action republished notice on March 14, 2011 and April 19, 2011. *See* Trinko Decl., Ex. D & E.  Both releases referenced May 9, 2011 as the deadline to seek appointment as lead plaintiff. *See id*. The *Kanchanapoom* action, currently pending in the Central District of California, was filed on March 4, 2011—prior to the filing of the above-captioned *Dobina* action. Notice of the *Kanchanapoom* action, however, was not filed until March 11, 2011. *See* Trinko Decl., Ex. F.

### B. AFME is the "Most Adequate Plaintiff"

#### 1. AFME has the Largest Financial Interest in the Relief Sought by the Class

AFME suffered losses of approximately $3,978,622 (on a FIFO basis) and $3,555,477 (on a LIFO basis) in connection with its Class Period transactions in Weatherford common stock.[5] *See* Trinko Decl., Ex. B. To the best of its knowledge, AFME's loss represents the largest financial interest in the relief sought by the class. *See Kaplan*, 240 F.R.D. at 93-94.

#### 2. AFME Satisfies Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Although Rule 23 consists of four requirements, at this stage of the litigation, a movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *see also Shi v. SINA Corp.*, 2005 U.S. Dist. LEXIS 13176, at *7-8 (S.D.N.Y. July 1, 2005) ("At this stage, only a preliminary showing of typicality and adequacy is required.").

---

[5] FIFO and LIFO are the two methodologies that courts use to calculate losses. *See Vladimir v. Bioenvision, Inc.*, 2007 U.S. Dist. LEXIS 93470, at *18 (S.D.N.Y. Dec. 21, 2007) ("Under FIFO,

### a.     AFME is Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Espeed*, 232 F.R.D. at 102 (citation omitted).

Here, AFME is typical because, just like all other class members asserting claims under the Exchange Act, it: (1) purchased or otherwise acquired Weatherford securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the defendants' conduct causing the price of Weatherford's securities to fall. *See Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, at *12 (S.D.N.Y. May 9, 2008).  Thus, AFME's claims are typical of other class members' claims because both sets of claims arise out of the same course of events and predicated on identical theories of liability and damages. *See id.*

### b.     AFME is Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class."  Specifically, the adequacy requirement is fulfilled when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94; *see also Shi,* 2005 U.S. Dist. LEXIS 13176, at *9.

---

stocks which were acquired first are assumed to be sold first for loss calculation purposes.  Under LIFO, stocks which were acquired most recently are assumed to be sold first.") (citations omitted).

Here, AFME is adequate to represent the class. AFME's interests are aligned with the interests of the class as both suffered losses from the revelation of defendants' false and misleading statements and material omissions. Additionally, there is no evidence of antagonism between AFME and the class, and AFME has certified its willingness to serve as a representative of the class. *See* Trinko Decl., Ex. A. AFME is a sophisticated institutional investor that suffered a substantial loss as a result of its Class Period purchases of Weatherford stock and thus is committed to vigorously prosecuting this litigation and maximizing the recovery for the class. *See* Trinko Decl., Exs. A & B. Finally, as shown below, AFME's proposed lead counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, AFME has made a *prima facie* showing of typicality and adequacy.

In addition to satisfying the preliminary requirements of Rule 23, the appointment of AFME as lead plaintiff also fulfills a critical legislative goal behind enacting the PSLRA—encouraging sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions. *See Shi*, 2005 U.S. Dist. LEXIS 13176, at *15-16 (noting that several courts "have understood [the PSLRA] to favor large institutional investors as lead plaintiff") (citation omitted); *Espeed*, 232 F.R.D. at 99 ("The fact that the PSLRA was designed to favor institutional investors should be taken into account…"); *see also* H.R. Conf. Rep. No. 104-369 (1995) reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). AFME is one of the largest pension funds in the entertainment industry and has over $1 billion dollars in assets under management. AFME's sophistication assures the class that it will adequately litigate this action and supervise class counsel. Thus, AFME is clearly a suitable—and, indeed, preferred—lead plaintiff.

### C.     The Court Should Approve AFME's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Kaplan*, 240 F.R.D. at 96.  The Court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Because AFME has selected and retained counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to the greatest recovery possible for the class, its choice of lead counsel should be approved.

AFME has selected Barroway Topaz as lead counsel for the class.  Barroway Topaz specializes in prosecuting complex class action litigation and is one of the preeminent law firms in its field.  Barroway Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  Barroway Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including actions involving Lehman Brothers, Bank of America, Medtronic, Johnson & Johnson, Transocean and UBS and has secured billions of dollars in recoveries for investors.  *See* Trinko Decl., Ex. G.

In addition, the Law Offices of Curtis V. Trinko, LLP has extensive experience in the area of securities and complex litigation and is highly qualified to perform the duties of liaison counsel.  *See* Trinko Decl., Ex H.  Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms.  Both firms are highly qualified and will zealously represent the class's interests.

## IV. CONCLUSION

For the foregoing reasons, AFME respectfully requests that the Court: (i) appoint AFME as lead plaintiff pursuant to the PSLRA; (ii) approve its selection of Barroway Topaz to serve as lead counsel for the class; and (iii) approve its selection of the Law Offices of Curtis V. Trinko, LLP as liaison counsel for the class.

Dated:  May 9, 2011                                             Respectfully submitted,

/s/ Curtis V. Trinko
Curtis V. Trinko
**LAW OFFICES OF CURTIS V. TRINKO, LLP**
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158

*Liaison Counsel for American Federation of Musicians and Employers' Pension Fund and Proposed Liaison Counsel*

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Sean M. Handler
Darren J. Check
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for American Federation of Musicians and Employers' Pension Fund and Proposed Lead Counsel*