**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WEATHERFORD INTERNATIONAL SECURITIES LITIGATION | 11 Civ. 1646 (LAK) |
| | (ECF Case) |
| | <u>CLASS ACTION</u> |
| | <u>DEMAND FOR JURY TRIAL</u> |

**LEAD PLAINTIFF'S AND GEORGIA FIREFIGHTERS' PENSION FUND'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY CLASS
AND APPOINT CLASS REPRESENTATIVES AND CLASS COUNSEL**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF FACTS ...................................................................................... 4

III.    ARGUMENT ....................................................................................................... 6

        A.      Plaintiffs Satisfy the Prerequisites of Rule 23(a) .................................... 7

                1.      Numerosity Is Admitted ................................................................. 7

                2.      Commonality Is Admitted .............................................................. 8

                3.      Plaintiffs' Claims Are Typical .................................................... 10

                4.      Plaintiffs and Their Selected Lead Counsel Are Adequate ....... 12

        B.      Rule 23(b)(3) Is Satisfied ....................................................................... 13

                1.      Common Questions of Law and Fact Predominate .................... 13

                2.      Reliance Poses No Barrier to Class Certification ..................... 15

                3.      Superiority Is Satisfied ............................................................... 19

IV.     CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

CASES                                                                     Page(s)

*Affiliated Ute Citizens v. United States,*
    406 U.S. 128 (1972) ........................................................................15

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................13

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
    133 S. Ct. 1184 (2013) ............................................................ *passim*

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ..............................................................3, 16, 17

*Blatt v. Muse Techs., Inc.,*
    2002 WL 31107537 (D. Mass. 2002) .............................................18

*Cammer v. Bloom,*
    711 F. Supp. 1264 (D.N.J. 1989) ......................................17, 18, 19

*City of Livonia Emps.' Ret. Sys. v. Wyeth,*
    284 F.R.D. 173 (S.D.N.Y. 2012) ...................................................11

*Comcast Corp. v. Behrend,*
    2013 WL 1222646 (U.S. 2013) ......................................................14

*Consol. Rail Corp. v. Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ...............................................................7

*Cromer Fin. Ltd. v. Berger,*
    205 F.R.D. 113 (S.D.N.Y. 2001) ...................................................15

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 (S.D.N.Y. 2008) .....................................................8

*Darquea v. Jarden Corp.,*
    2008 WL 622811 (S.D.N.Y. 2008) ..................................................2

*Dobina v. Weatherford Int'l Ltd.,*
    2012 WL 5458148 (S.D.N.Y. 2012) .............................................1, 2

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ..........................................................................6

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
    89 F.R.D. 87 (S.D.N.Y. 1981) .......................................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ............................................................................3, 16

*Fogarazzo v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) .......................................................................9

*In re Auction Houses Antitrust Litig.*,
    193 F.R.D. 162 (S.D.N.Y. 2000) ..................................................................7, 20

*In re Boston Scientific Corp. Sec. Litig.*,
    604 F. Supp. 2d 275 (D. Mass. 2009) ...............................................................18

*In re Dynex Capital, Inc. Sec. Litig.*,
    2011 WL 781215 (S.D.N.Y. 2011) ...................................................................11

*In re Flag Telecom Holdings Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ......................................................................10, 12

*In re Globalstar Sec. Litig.*,
    2004 WL 2754674 (S.D.N.Y. 2004) .....................................................8, 9, 10, 12

*In re HealthSouth Corp. Sec. Litig.*,
    261 F.R.D. 616 (N.D. Ala. 2009) ...................................................................17

*In re Indep. Energy Holdings Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ....................................................................15

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    286 F.R.D. 226 (S.D.N.Y. 2012) ........................................................7, 11, 14, 19

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ............................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2013 WL 440622 (S.D.N.Y. 2013) ..........................................................11, 14, 20

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011) ...............................................................14

*In re Marsh & McLennan Cos. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. 2009) ....................................................................8

*In re Merck & Co., Sec., Derivative & ERISA Litig.*,
    2013 WL 396117 (D.N.J. 2013) ......................................................................17

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) ....................................................................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................20

*In re Nortel Networks Corp. Sec. Litig.*,
    2003 WL 22077464 (S.D.N.Y. 2003) ....................................................11

*In re Parmalat Sec. Litig.*,
    2008 WL 3895539 (S.D.N.Y. 2008) ..........................................8, 10, 14

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...................................................17

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................11

*In re PHP Healthcare Corp.*,
    128 F. App'x 839 (3d Cir. 2005) ..........................................................17

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................16

*In re Salomon Analyst Metromedia Litig.*,
    544 F. 3d 474 (2d Cir. 2008) .................................................................3

*In re Sanofi-Aventis Sec. Litig.*,
    2013 WL 1149672 (S.D.N.Y. 2013) ......................................................16

*In re SLM Corp. Sec. Litig.*,
    2012 WL 209095 (S.D.N.Y. 2012) .........................................................2

*In re Smith Barney Transfer Agent Litig.*,
    2013 WL 1150737 (S.D.N.Y. 2013) ......................................................10

*In re Take Two Interactive Sec. Litig.*,
    2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. 2010) ..................................15

*In re Towers Fin. Corp. Noteholders Litig.*,
    177 F.R.D. 167 (S.D.N.Y. 1997) ............................................................6

*In re Veeco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ....................................................6, 9, 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)..................................................................12

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................7, 10, 11

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ..............................................................11, 12, 13

*Katz v. Image Innovations Holdings*,
2010 WL 2926196 (S.D.N.Y. 2010) ....................................................................2, 7

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) .......................................................................14, 17

*Latino Officers Ass'n v. City of N.Y.*,
209 F.R.D. 79 (S.D.N.Y. 2002) .......................................................................7, 8, 12

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)....................................................................................8

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993) ..............................................................................6

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)..............................................................................19

*Pa. Ave. Funds v. Inyx Inc.*,
2011 WL 2732544 (S.D.N.Y. 2011)............................................................... *passim*

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011) .........................................................................8, 14

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)...................................................................................10

*Rosado v. China N.E. Petroleum Holdings*,
692 F.3d 34 (2d Cir. 2012).....................................................................................15

*Seijas v. Republic of Arg.*,
606 F.3d 53 (2d Cir. 2010).....................................................................................14

*Simpson v. Specialty Retail Concepts, Inc.*,
823 F. Supp. 353 (M.D.N.C. 1993) .......................................................................18

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
283 F.R.D. 199 (S.D.N.Y. 2012) .................................................................. *passim*

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010)...................................................................................13

*White v. First Am. Registry*,
230 F.R.D. 365 (S.D.N.Y. 2005) ...........................................................................8

**RULES & STATUTES**

17 C.F.R. pt. 237 (1981) ............................................................................................................19

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

H.R. REP. No. 104-369 (1995)...................................................................................................13

## I.     INTRODUCTION

Lead Plaintiff American Federation of Musicians and Employers' Pension Fund ("Lead Plaintiff" or "AFME") and proposed class representative Georgia Firefighters' Pension Fund ("Georgia Firefighters")[1] (collectively, "Plaintiffs") move to certify a class of all persons who purchased or otherwise acquired Weatherford International Ltd. ("Weatherford" or "the Company") common stock between April 25, 2007 and March 1, 2011 (the "Class Period"), inclusive, and who were damaged thereby (the "Class"). Excluded from the proposed Class are Defendants and Weatherford's officers, affiliates, and directors, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which a Defendant has a controlling interest. Plaintiffs further move the Court to appoint them as Class Representatives, and to appoint Lead Counsel as Class Counsel pursuant to Fed. R. Civ. P. 23 ("Rule 23").

Plaintiffs bring this proposed securities class action against Weatherford, Bernard J. Duroc-Danner ("Duroc-Danner"), Andrew P. Becnel ("Becnel"), Charles E. Geer, Jr. ("Geer"), and Jessica Abarca ("Abarca") (collectively, "Defendants"). At present, Plaintiffs' claims arise out of Defendants' false and misleading statements about the Company's internal controls over accounting and financial reporting for income taxes. The Court sustained these claims in a Memorandum Opinion dated November 7, 2012 in *Dobina v. Weatherford Int'l Ltd.*, 2012 WL 5458148 (S.D.N.Y. 2012).[2] The Court upheld Lead Plaintiff's §10(b) Securities Exchange Act

---

[1]     The parties submit herewith a [Proposed] Stipulation and Order adding Georgia Firefighters as a party to this litigation. *See* Ex. 1. Unless otherwise noted, all "Ex." references are to the Exhibits attached to the Affidavit of Ramzi Abadou in Support of Lead Plaintiff's and Georgia Firefighters' Pension Fund's Motion to Certify Class and Appoint Class Representatives and Class Counsel.

[2]     Unless otherwise noted, all emphasis is added and internal citations are omitted.

of 1934 ("Exchange Act") claims against Weatherford and Becnel, and §20(a) claims against Duroc-Danner, Becnel, Geer, and Abarca.  *Id.*

"Because of the usefulness of class actions in addressing allegations of securities fraud, the class certification requirements are to be construed liberally."  *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *3 (S.D.N.Y. 2012) (quoting *Darquea v. Jarden Corp.*, 2008 WL 622811, at *4 (S.D.N.Y. 2008)).  Plaintiffs and at least hundreds of members of the proposed Class suffered substantial damages due to Defendants' §§10(b) and 20(a) Exchange Act violations as alleged in the Amended Complaint for Violation of the Federal Securities Laws (the "Amended Complaint") (Docket No. 59).  Claims "'alleging violations of Sections 10(b) and 20(a) of the Exchange Act are especially amenable to class certification.'"  *SLM*, 2012 WL 209095, at *4 (quoting *Katz v. Image Innovations Holdings*, 2010 WL 2926196, at *3 (S.D.N.Y. 2010)).

Defendants admit that Class members are so numerous that joinder would be impracticable.[3]  *See* Rule 23(a)(1).  Commonality is similarly satisfied because multiple questions of fact and law about Defendants' false and misleading statements are common to the proposed Class.  *See* Rule 23(a)(2); Second Amended Answer, ¶233; RFA Responses at 5-11. The proposed Class Representatives' claims are typical because the legal and factual issues applicable to them are similar to those applicable to the Class.  *See* Rule 23(a)(3).  AFME and Georgia Firefighters also are adequate because their interests are directly aligned with the interests of the putative Class stemming from their purchases of Weatherford securities during

---

[3]     *See* Defendants Weatherford International Ltd., Bernard Duroc-Danner, Andrew P. Becnel, Jessica Abarca, and Charles E. Geer, Jr.'s Second Amended Answer to Amended Complaint (the "Second Amended Answer") (Docket No. 115), ¶230; Defendants Weatherford International Ltd., Bernard Duroc-Danner, Andrew Becnel, and Charles Geer, Jr.'s Responses and Objections to Lead Plaintiff's First Set of Requests for Admissions (Ex. 2) (the "RFA Responses") at 4.  Defendant Jessica Abarca's Responses and Objections to Lead Plaintiff's First Set of Requests for Admissions (Ex. 3) contain the same admissions as the specific RFA Responses cited herein.

the Class Period.  *See* Rule 23(a)(4).  Further, proposed Class Counsel, Kessler Topaz Meltzer & Check, LLP, is adequate.  *See id.*; Ex. 4.

Common questions also predominate over any individual questions here, and the class mechanism should be deemed the superior method for adjudicating Plaintiffs' claims.  *See* Rule 23(b)(3); *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (Ginsburg, J.) ("under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class certification stage");[4] *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011) (Roberts, C.J.) ("The question presented in this case is whether securities fraud plaintiffs must also prove loss causation in order to obtain class certification.  We hold that they need not.").  Plaintiffs have also established that a presumption of reliance applies under the fraud-on-the-market theory because Weatherford's common stock trades on the New York Stock Exchange ("NYSE") – an efficient market.  *See* Second Amended Answer, ¶¶230, 244; RFA Responses at 13.  Nevertheless, in further support of their showing of market efficiency, Plaintiffs also respectfully submit herewith the expert report of Chad Coffman, CFA (Ex. 5) ("Coffman Report"), establishing that Weatherford's common stock traded in an efficient market throughout the Class Period.  Accordingly, a presumption of reliance applies to Plaintiffs' claims.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988).

Accordingly, for all the reasons set forth herein, Plaintiffs respectfully request that the Court grant their motion for class certification in *toto*.

---

[4]      In resolving a Circuit split, *Amgen* overruled *In re Salomon Analyst Metromedia Litig.*, 544 F. 3d 474 (2d Cir. 2008), which had previously required plaintiffs to establish materiality to invoke Rule 23(b)(3).

## II.    SUMMARY OF FACTS

Weatherford describes itself as an international provider of equipment and services used in the drilling, evaluation, completion and production of oil and natural gas wells.  ¶39.[5]  In 2002, Weatherford reincorporated from Houston to Bermuda because, according to the Company, "[u]nder current Bermuda law, a Bermuda company is not required to pay taxes in Bermuda on either income or capital gains."  ¶62.

By the start of the Class Period in 2007, Weatherford suddenly started reporting significantly lower effective income tax rates than it had historically reported: 15% for fiscal year 2008, 6.5% for fiscal year 2009, and 17% for fiscal year 2010.  ¶¶7, 17.  Defendants attributed the lower rate to "good work from our tax group in terms of planning," "benefits realized from the refinement of our international tax structure," "continued planning activities," "more effective tax planning," and "incremental tax planning that we undertook during the quarter in connection with our move to Geneva" to explain Weatherford's lower publicly-reported effective income tax rate during the Class Period.  ¶¶8, 17, 74, 79, 90, 103, 107, 120.  In truth, the Company's low tax rates had been achieved only through Defendants' severely reckless business conduct.  ¶¶65, 75-76, 80, 83, 88-89, 93, 102, 107-08, 112, 129, 235-38.

Critically, throughout the Class Period, Weatherford Chief Executive Officer Duroc-Danner and Chief Financial Officer Becnel publically represented that they were personally "responsible for establishing and maintaining [the Company's] disclosure controls and procedures" under the federal securities laws.  ¶142.  Despite the known significant, material problems with Weatherford's internal controls over financial reporting for income taxes, for each

---

[5]        Unless otherwise noted, all "¶" cites are to the Amended Complaint.

quarter and fiscal year during the Class Period, Duroc-Danner and Becnel represented that they had personally:

> Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, *to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities*.

¶¶15, 142.  Additionally, each Weatherford quarterly report on Form 10-Q and annual report on Form 10-K filed with the United States Securities Exchange Commission ("SEC") during the Class Period assured investors that Duroc-Danner and Becnel had "carried out an evaluation … of the effectiveness of [Weatherford's] disclosure controls and procedures" and "[b]ased upon that evaluation … concluded [that Weatherford's] disclosure controls and procedures [were] effective as of the end of the period covered by this report."  ¶¶141, 172.

On March 1, 2011, Defendants suddenly announced that Weatherford would be restating approximately $500 million in financial results for 2007-2009 and the first three quarters of 2010 due to "material weakness[es] in internal control over financial reporting for income taxes." ¶134.  In Defendants' own words, the Company had to restate because of "1) inadequate staffing and technical expertise…, 2) ineffective review and approval practices…, 3) inadequate processes to effectively reconcile income tax accounts, and 4) inadequate controls over the preparation of quarterly tax provisions."  ¶16.  Defendants also noted "inconsistencies in the execution of controls, the quality of the execution of controls and in some cases the lack of documented performance of controls."  ¶32.  Defendants further admitted that the Company's internal controls "were not designed to provide for adequate and timely identification and review of various income tax calculations … in accordance with U.S. GAAP."  ¶¶16, 134-35, 145.  On this news, the Company's stock price fell 11% on unusually heavy trading volume.  ¶¶24, 29, 138.

Following Weatherford's March 1, 2011 announcement and subsequent restatement, the Company has restated its financial results four additional times due to the Company's admitted material weaknesses in internal controls over financial reporting for income taxes – bringing the Company's total restated amount to nearly $1 billion.  In addition, since the end of the Class Period, the Company has been unable to report effective income tax rates anywhere near Weatherford's artificially depressed Class Period figures.  On February 26, 2013, in a press release Weatherford was caused to file with the SEC on Form 8-K, Weatherford disclosed that (from a Class Period low of *6.5%* for 2009) its effective tax rate for 2011, 2012 and the fourth quarter of 2012 were *60%, 50% and 92%*, respectively.  Ex. 6.  To date, Weatherford has still been unable to remediate the material weaknesses in the Company's internal controls over accounting and financial reporting for income taxes.  *Id.*  Similarly, Defendants Becnel, Geer and Abarca have been terminated, and on March 7, 2013, the Company dismissed Ernst & Young, LLP, its Class Period independent auditor.  *See* ¶46; Exs. 7-9.

## III.   ARGUMENT

"The Second Circuit has [noted] its preference for class certification in securities fraud litigation, and [] directed district courts to liberally interpret Rule 23 class certification requirements."  *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167 (S.D.N.Y. 1997); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993) (same); *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006).[6]

As this Court is well aware, to certify a class under Rule 23, Plaintiffs must satisfy the four prerequisites of Rule 23(a) – "numerosity," "commonality," "typicality," and "adequacy."

---

[6]      *See, also*, *Amgen*, 133 S. Ct. at 1201 ("Congress, the Executive Branch, and this Court … have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission."); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (same).

In addition, Plaintiffs must satisfy one of the requirements of Rule 23(b).  *See In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 (S.D.N.Y. 2012) (Kaplan, J.).  "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen*, 133 S. Ct. at 1195, and courts must "assure that a class certification motion does not become a pretext for a partial trial on the merits." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (citing *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)); *see also Katz*, 2010 WL 2926196, at *2.

### A.      Plaintiffs Satisfy the Prerequisites of Rule 23(a)

#### 1.      Numerosity Is Admitted

"Rule 23(a)(1) requires that the class be so numerous that joinder of all its members is impracticable.  There is no bright-line number at which joinder becomes impracticable." *Latino Officers Ass'n v. City of N.Y.*, 209 F.R.D. 79, 88 (S.D.N.Y. 2002) (Kaplan, J.).  In this Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 n.2 (S.D.N.Y. 2000) (Kaplan, J.) ("While most class actions have involved larger numbers, classes as small as 35 or 36 members have been held to satisfy the numerosity requirement.").

Here, the Court need not extensively bother with numerosity as Defendants admit that the putative Class contains more than one hundred members. *See* Second Amended Answer, ¶230; *see also* RFA Responses at 4.  Specifically, "Defendants admit that the class as alleged in the Amended Complaint is so numerous that joinder of all members of the purported class would be impracticable."  Second Amended Answer, ¶230; RFA Responses at 5.[7]  "As [Defendants]

---

[7]      In addition, "courts in this district have certified plaintiff classes based on the volume of outstanding shares." *Pa. Ave. Funds v. Inyx Inc.*, 2011 WL 2732544, at *3 (S.D.N.Y. 2011)

concede[] numerosity, it is necessary to deal with only the three latter [Rule 23(a)] criteria." *White v. First Am. Registry*, 230 F.R.D. 365, 366 (S.D.N.Y. 2005) (Kaplan, J.).

### 2.     Commonality Is Admitted

"The commonality requirement, particularly in securities fraud litigation, is generally considered a low hurdle easily surmounted." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *9 (S.D.N.Y. 2009); *see also In re Globalstar Sec. Litig.*, 2004 WL 2754674, at *4 (S.D.N.Y. 2004). "The commonality requirement is satisfied 'if plaintiffs' grievances share a common question of law or of fact.'" *Latino Officers*, 209 F.R.D. at 88 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). "Commonality 'does not mean that all issues must be identical as to each member.'" *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008). Indeed, "[a] single common issue of law or fact may suffice to satisfy this requirement." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 206-07 (S.D.N.Y. 2012) (Kaplan, J.).

The commonality "requirement has been applied permissively in securities fraud litigation and generally is satisfied [where, as here] putative class members have been injured by similar material misrepresentations and omissions." *In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *4 (S.D.N.Y. 2008) (Kaplan, J.); *see also Tsereteli*, 283 F.R.D. at 206 ("Commonality is plainly satisfied [where] the alleged misrepresentations … relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues."); *Inyx*, 2011 WL 2732544, at *4; *Pub. Emps.' Ret. Sys. of Miss. v.*

---

(collecting cases). During the Class Period, Weatherford had between 674 million and 741 million shares of common stock outstanding, with an average daily trading volume of 13.4 million shares on the NYSE. *See* Coffman Report, ¶¶30, 63.

*Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011); *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005); *Veeco*, 235 F.R.D. at 238.

Here, again, Defendants admit that at least eight separate questions of law or fact are common to all members of the Class, including: (1) "whether Defendants violated the federal securities laws"; (2) "the nature and existence of material misrepresentations and omissions as alleged in the Amended Complaint"; (3) "whether Defendants publicly omitted and/or misrepresented material facts"; (4) "whether the price of Weatherford's publicly traded common stock was artificially inflated during the class period as a result of Defendants' allegedly wrongful conduct"; (5) "whether Defendants' misrepresentations, and/or omissions caused class members to suffer economic losses"; (6) the "extent to which members of the class sustained damages"; (7) "the proper measure of damages sustained by class members"; and (8) "whether the Individual Defendants are liable as 'control persons' under Section 20(a) of the Securities and Exchange Act of 1934." *See* Second Amended Answer, ¶233; RFA Responses at 5-11. Moreover, Defendants broadly concede that the Amended Complaint alleges "a series of purported misrepresentations and omissions throughout the alleged class period, that form a common course of conduct that affected all members of the class." RFA Responses at 7.

Plaintiffs' claims also raise the common questions of whether Defendants' material misrepresentations and omissions caused Plaintiffs' losses, and whether Defendants acted with scienter. ¶¶15-17, 24, 29, 32, 57-59, 138, 141-45, 235-41; *Inyx*, 2011 WL 2732544, at *4 ("whether [material misstatements or omissions] were knowingly and recklessly issued, and ensuing causation issues" present common questions); *Globalstar*, 2004 WL 2754674, at *4.[8] Rule 23(a)(2)'s commonality requirement is therefore plainly satisfied here. *Id.*

---

[8] In addition, Plaintiffs' claims under §20(a) of the Exchange Act rest on the common legal and factual questions of whether there has been an underlying violation of §10(b), and whether

### 3.     Plaintiffs' Claims Are Typical

"The requirement of typicality is not demanding."   *Tsereteli*, 283 F.R.D. at 208.

Plaintiffs must show that "each class member's claim arises from the same course of events and

each class member makes similar legal arguments to prove the defendant's liability." *In re Flag

Telecom Holdings Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  Typicality "does not require that

the factual background of each named plaintiff's claim be identical to that of all class members;

rather, it requires that the disputed issue of law or fact occupy essentially the same degree of

centrality to the named plaintiff's claim as to that of the other members." *Tsereteli*, 283 F.R.D.

at 208.  "When it is alleged that the same unlawful conduct was directed at or affected both the

named plaintiff and the class sought to be represented, the typicality requirement is usually met

irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v.

Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Vivendi*, 242 F.R.D. at 85 (same).  "So long as

plaintiffs [] assert that defendants committed the same wrongful acts in the same manner, against

all members of the class, they establish the necessary typicality." *Tsereteli*, 283 F.R.D. at 208.

"Courts finding typicality generally look not at the plaintiffs' behavior, but rather [at] the

defendant's actions." *Id.*; *see also In re Smith Barney Transfer Agent Litig.*, 2013 WL 1150737,

at *3-4 (S.D.N.Y. 2013).[9]

Here, Plaintiffs' claims are typical because, like all other absent Class members, their

claims are based on Defendants' material misstatements and omissions about Weatherford's

---

certain Defendants exercised "control" over the violators.   *See, e.g.*, *Globalstar*, 2004
WL 2754674, at *4.

[9]     "The unique defense rule … is not rigidly applied in this Circuit."  *Parmalat*, 2008 WL
3895539, at *5.  "Indeed, it is intended to protect plaintiff class – not to shield defendants from a
potentially meritorious suit and has generally been applied only where a full defense is available
against an individual plaintiff's action."  *Id.*  "Moreover, it is beyond reasonable dispute that a
representative may satisfy the typicality requirement even though that party may later be barred
from recovery by a defense particular to him that would not impact other class members."  *Id.*

internal controls over accounting and financial reporting for income taxes.[10]   The legal and factual arguments Plaintiffs use to support their allegations are the same ones that absent Class members would similarly advance to support their claims.   *See, e.g., Vivendi*, 242 F.R.D. at 85 ("[P]laintiffs will necessarily seek to develop facts relating to … the dissemination of allegedly false or misleading statements….   Such allegations [] generally … satisfy the typicality requirement."); *see also Inyx*, 2011 WL 2732544, at *4; *In re Dynex Capital, Inc. Sec. Litig.*, 2011 WL 781215, at *8 (S.D.N.Y. 2011) (claims typical because legal theories and proof would be the same for plaintiffs' claims and claims of class members).   Plaintiffs' reliance on investment advisors during the Class Period does nothing to defeat typicality.

> [D]elegation of many or all of [an issuer's] investment decisions to investment advisors…[does not defeat typicality because q]uestions as to what [plaintiffs] or their investment advisors knew as a result of meetings with [defendant]…are insufficient to defeat a finding that commonality, typicality, or adequacy have been met because the nature of the claims that [p]laintiffs must prove remains unchanged.

*IndyMac*, 286 F.R.D. at 235.   *See also In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 440622, at *2 (S.D.N.Y. 2013) (class representative typical even though "it delegated its investment decisions to its investment manager, which used a proprietary trading model to invest in a portfolio that tracked the S&P 500 index," reasoning that "[t]racking an index for an efficient market is sufficient reliance for the purpose of class certification") (citing *In re Nortel Networks Corp. Sec. Litig.*, 2003 WL 22077464, at *3 (S.D.N.Y. 2003)).[11]   Typicality is therefore satisfied here.

---

[10]        ¶¶15-17, 28, 31-33, 77, 81, 85, 91, 94, 96, 99, 104, 109, 113, 116, 121, 130, 133-36, 139-45, 171-76, 184, 193.

[11]        *See also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 45 (S.D.N.Y. 2012) ("it is well established that reliance on the advice of third parties does not, in and of itself, constitute non-reliance, so long as the third party, in turn, relied on the integrity of the market"); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012) (same); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003) (same).

### 4.    Plaintiffs and Their Selected Lead Counsel Are Adequate

Adequacy "requires that the named or lead plaintiffs have 'a sufficient stake in the outcome to ensure zealous advocacy, that the class representative does not have antagonistic or conflicting claims with other class members, and that counsel for the named plaintiff is experienced, qualified, and generally able to conduct the litigation.'" *Latino Officers*, 209 F.R.D. at 90; *see In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134 (S.D.N.Y. 2008).  Only a fundamental conflict between the interests of the proposed class representative and the class can defeat adequacy.[12]  *See Flag Telecom*, 574 F.3d at 35 ("In order to defeat a motion for [class] certification, however, the conflict 'must be fundamental.'").

Here, Plaintiffs' interests are directly aligned with the proposed Class's interests that were similarly undermined by Defendants' materially untrue statements and omissions.  *See WorldCom*, 219 F.R.D. at 282 (explaining that "named plaintiffs' interests are directly aligned with those of the absent class members; they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments"); Docket No. 13-1 at 3-5; Certification of the Georgia Firefighters' Pension Fund Pursuant to the Federal Securities Laws (Ex. 10) at 3-4 (detailing Plaintiffs' Class Period transactions).  If, or when, Plaintiffs prove their §§10(b) and 20(a) claims, they will also have proved the Class's claims, thus satisfying Rule 23's adequacy requirement.  *See*, *e.g.*, *Inyx*, 2011 WL 2732544, at *5; *Globalstar*, 2004 WL 2754674, at *4.

The proposed Class Representatives have also demonstrated their commitment to monitor and supervise the prosecution of this Action on behalf of the Class by retaining experienced

---

[12]    "[N]ot all conflicts are fatal to certification, only those that are fundamental and actual rather than hypothetical or speculative." *Latino Officers*, 209 F.R.D. at 90 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001)).

counsel, receiving regular status updates, participating in strategic decisions, and actively engaging in discovery.   Moreover, AFME and Georgia Firefighters are large, sophisticated institutional investors that are precisely the type of entities that Congress sought to empower in enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA").   *See* H.R. REP. No. 104-369, at 28 (1995) (Conf. Rep.); *WorldCom*, 219 F.R.D. at 282.   Finally, because proposed class counsel is highly qualified and capable of prosecuting this Action, the requirements of Rule 23(a) are satisfied. *See* Ex. 4; *see also* Rule 23(g).

**B.      Rule 23(b)(3) Is Satisfied**

Rule 23(b)(3) requires that common questions of law and fact predominate over any questions affecting only individual class members, and that the class action mechanism be superior to other available methods for fairly and efficiently adjudicating the dispute.   *See id.* Both requirements are met here.

**1.      Common Questions of Law and Fact Predominate**

Under Rule 23(b)(3), the proposed class should be "sufficiently cohesive to warrant adjudication by representation."   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."   *Tsereteli*, 283 F.R.D. at 210 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).   Predominance "does not require a plaintiff to show that there are *no* individual issues."   *Id.* (emphasis in original).   "Rather, [i]n determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class."   *Id.*   "Where issues of liability are 'common to the

class, common questions are held to predominate over individual questions.'" *Id.* (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

Here, to prove their §§10(b) and 20(a) claims, Plaintiffs will demonstrate that Defendants "made a materially false statement or omitted a material fact, with *scienter*, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 274 (S.D.N.Y. 2011) (emphasis in original).  This Court holds that such questions present common issues that predominate over individual issues. "It is common ground, save for the issue of transaction causation, that the domestic plaintiffs' claims are predicated upon a common nucleus of facts and a common course of conduct such that each element necessary to prove defendants' allegedly fraudulent conduct is common to all class members." *Parmalat*, 2008 WL 3895539, at *8.

> Whether or not…[defendants'] financial statements contained material misrepresentations and omissions and whether any corrective disclosures were disseminated widely are questions susceptible of common proof.  Plaintiffs who have shown the existence of common questions are ***not*** obliged to prove the non-existence of possible individual issues – in the absence of any significant evidence of such issues – in order to obtain certification.

*Lehman*, 2013 WL 440622, at *4; *see also Merrill Lynch*, 277 F.R.D. at 106 ("essentially, whether [statements] were false or misleading in one or more respects – are clearly susceptible to common answers").  Moreover, "[i]ssues regarding individualized damage calculations generally … are 'not sufficient to defeat class certification.'"  *IndyMac*, 286 F.R.D. at 242 (quoting *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010)); *see also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008).

The Supreme Court's decision last week in *Comcast Corp. v. Behrend*, 2013 WL 1222646 (U.S. 2013), a case arising under the federal antitrust laws, does not alter this conclusion because Defendants have already admitted that (a) "whether Defendants'

misrepresentations, and/or omissions caused class members to suffer economic losses"; (b) the "extent to which members of the class sustained damages"; and (c) "the proper measure of damages sustained by class members" are questions common to all Class members.  RFA Responses at 9-10; Second Amended Answer, ¶233.  Moreover, as this is a securities case, ***all*** class members' "damages consist[] of the difference between the price paid and the 'value' of the stock when bought."  *Rosado v. China N.E. Petroleum Holdings*, 692 F.3d 34, 38 (2d Cir. 2012); *see also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972) (adopting the out-of-pocket measure of damages).  Hence, damages are and can easily be measured on a classwide basis.

Given the common nucleus of facts and course of conduct necessary to prove the claims against Defendants under §§10(b), 20(a) and Rule 10b-5, Rule 23(b)(3)'s predominance requirement is plainly satisfied.[13]  *In re Indep. Energy Holdings Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002) ("Class actions are generally well-suited to securities fraud cases, in large part because they avoid the time and expense of requiring all class members to proceed individually.").

## 2.    Reliance Poses No Barrier to Class Certification

Plaintiffs are entitled to a presumption of reliance here because Weatherford's stock traded in an efficient market.  *See* Coffman Report.  As Justice Ginsburg just recently explained in *Amgen*, 133 S. Ct. at 1190, "[t]he fraud-on-the-market premise is that the price of a security

---

[13]    *See In re Take Two Interactive Sec. Litig.*, 2010 U.S. Dist. LEXIS 143837, at *27 (S.D.N.Y. 2010) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.") (attached hereto as Appendix A); *Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class.  Any individual issues will necessarily be secondary."); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 127 (S.D.N.Y. 2001).

traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security." *See also Halliburton*, 131 S. Ct. at 2185 (quoting *Basic*, 485 U.S. at 247). This is because "requiring proof of direct reliance would place an unnecessarily unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market." *Amgen*, 133 S. Ct. at 1192; *Inyx*, 2011 WL 2732544, at *8; *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 307 (S.D.N.Y. 2010). As with loss causation, proof of materiality is not required for plaintiffs to avail themselves of *Basic*.

> Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, the materiality of [defendants'] alleged misrepresentations and omissions is a question common to all members of the class.

*Amgen*, 133 S. Ct. at 1191 (emphasis in original).

"As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison." *Id.* Thus, "[w]hile [plaintiff] certainly must prove materiality to prevail on the merits, [] such proof is not a prerequisite to class certification." *Amgen*, 133 S. Ct. at 1191. *See also In re Sanofi-Aventis Sec. Litig.*, 2013 WL 1149672, at *6 (S.D.N.Y. 2013). Nor is a showing of loss causation required here. *See Halliburton*, 131 S. Ct. at 2186 ("The Court of Appeals erred by requiring [plaintiff] to show loss causation as a condition of obtaining class certification."). In fairness, "[l]oss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory."[14] *Halliburton*, 131 S. Ct. at 2186.

---

[14]    *See also* Kevin Metz et al., *U.S. Supreme Court Holds that Proof of Materiality Is Not a Prerequisite to Certifying a Securities Fraud Class Action Under §10(b) of the Securities Exchange Act and Rule 10b-5*, Latham & Watkins Client Alert, at 1 (Mar. 5, 2013), http://www.lw.com/thoughtLeadership/Proof-of-materiality-not-a-prerequisite (*Amgen* "will have a significant impact on defendants in securities fraud class actions at the class certification stage, in particular in the Second Circuit.").

An efficient market, as here, is one that is "both open and developed" and that "rapidly reflects new information in price." *Inyx*, 2011 WL 2732544, at *9. To determine market efficiency, courts often analyze the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989). *See, e.g.*, *Inyx*, 2011 WL 2732544, at *9.[15] But while "[t]he *Cammer* factors may be useful to determine efficiency of the market on which a security is traded is less open and well-developed than the NYSE," "[i]n this case [] a *Cammer* analysis is not required for Plaintiffs to establish market efficiency. It is undisputed that [Weatherford's common] stock trades on the [NYSE], consistently recognized by courts … as 'open and developed' and thus 'well suited for application of the fraud on the market theory.'" *In re Merck & Co., Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *11 (D.N.J. 2013); *see also Lapin*, 254 F.R.D. at 183 ("no argument could be made that the New York Stock Exchange is not an efficient market") (citing *Basic*, 485 U.S. at 249 n.29).[16]

Indeed, "the New York Stock Exchange [is] one of the most efficient capital markets in the world." *In re PHP Healthcare Corp.*, 128 F. App'x 839, 848 (3d Cir. 2005). Thus, the fact that Weatherford's common stock traded on the NYSE, without more, establishes market efficiency here.[17] *See Merck*, 2013 WL 396117, at *11. Indeed, Defendants admit that many of

---

[15] The *Cammer* factors are: (1) a large weekly trading volume; (2) the existence of a significant number of analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file a Form S-3 Registration Statement; and (5) the existence of empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. *See, e.g.*, *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 303 (S.D.N.Y. 2005).

[16] *See also In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 634 (N.D. Ala. 2009) (When a stock trades on the NYSE, "a presumption is created that the market for that stock is developed and efficient.").

[17] *See* Second Amended Answer, ¶230 ("Defendants admit that Weatherford's common stock traded on the New York Stock Exchange throughout the purported class period."), ¶244; RFA Responses at 13.

the *Cammer* factors are satisfied here.   *See* Second Amended Answer, ¶¶230, 244; RFA Responses at 13, 15-16, 18-20.

Nevertheless, Plaintiffs' expert, Chad Coffman, studied each *Cammer* factor and determined that, not only do all of the *Cammer* factors support efficiency, but every single *Cammer* factor independently supports such a finding:

- Between approximately 674 million and 741 million Weatherford shares were issued and outstanding during the Class Period.  Coffman Report, ¶¶62-65; *see also* Second Amended Answer, ¶230 ("Defendants **admit** that, according to Weatherford's Form 10-Q for 3Q10, Weatherford had 741,424,789 shares outstanding on October 25, 2010.").

- Weatherford's common stock was heavily traded, with an average of 9.5% of all outstanding shares trading on a weekly basis.  Coffman Report, ¶¶28-32, Ex. 3.[18]

- Weatherford's common stock was listed on the NYSE, and assigned to a specialist who was required to provide liquidity for the security.  Coffman Report, ¶¶39-43.[19]

- Weatherford disseminated information to the public throughout the Class Period through press releases, periodic filings with the SEC, conference calls and other public disclosures.  RFA Responses at 20.

- Weatherford's securities were followed by at least 22 securities analysts, and were the subject of over 322 analyst reports during the Class Period.  Coffman Report, ¶¶33-38, Ex. 4; *see also* RFA Responses at 15 ("Defendants admit that over the course of the purported class period no fewer than 25 securities analysts issued reports regarding Weatherford.").[20]

- Weatherford was eligible to file a Form S-3 with the SEC during the Class Period and, in fact, did so. Coffman Report, ¶¶44-46; *see also* RFA Responses at 18-19 ("Defendants admit that Weatherford is a registered issuer and satisfied the issuer-eligibility requirements to file a Form S-3 Registration Statement with the SEC

---

[18]     *See Cammer*, 711 F. Supp. 2d at 1293 ("Turnover measured by average weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one."); *Blatt v. Muse Techs., Inc.*, 2002 WL 31107537, at *13 (D. Mass. 2002) (1.8% sufficient); *Simpson v. Specialty Retail Concepts, Inc.*, 823 F. Supp. 353, 355 (M.D.N.C. 1993) (0.75% sufficient).

[19]     *See In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 283-84 (D. Mass. 2009) (the presence of market maker – in the form of NYSE specialist – is indicative of market efficiency).

[20]     *See Blatt*, 2002 WL 31107537, at *13 (coverage by one analyst sufficient).

throughout the purported class period" and that Weatherford filed Form S-3 Registration Statements on May 8, 2008 and September 16, 2010).[21]

- There was a clear cause and effect relationship between new information regarding Weatherford and its stock price. Coffman Report, ¶¶47-61, Exs. 5-8, 9A-9P.

- The high percentage (between 75% and 98% of shares outstanding) of institutional ownership in Weatherford's common stock, Weatherford's large market capitalization (averaging $16.2 billion) and, its narrow bid-ask spread (between 0.011% and 0.088%) further support a finding of market efficiency. Coffman Report, ¶¶62-72, Exs. 10-12; *see also* RFA Responses at 16 ("Defendants admit that the average market capitalization for Weatherford common stock was approximately $16 billion during the purported class period" and that "as of the end of each fiscal quarter during the purported class period, institutional investors owned more than 50% of outstanding Weatherford common stock.").[22]

Thus, Plaintiffs have demonstrated market efficiency for purposes of this motion such that the predominance requirement of Rule 23 is met.

### 3. Superiority Is Satisfied

Rule 23's superiority requirement "focuses on '(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *IndyMac*, 286 F.R.D. at 242. "In general, securities suits … easily satisfy the superiority requirement of Rule 23." *Tsereteli*, 283

---

[21]    The SEC permits the filing of a Form S-3 Registration Statement only where "the stock is already traded on an open and efficient market, such that further disclosure is unnecessary." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 97 n.17 (D. Conn. 2010). The ability to file a Form S-3 is "*predicated on the Commission's belief that the market operates efficiently for these companies, i.e., that the disclosure in Exchange Act reports and other communications by the registrant, such as press releases, has already been disseminated and accounted for by the market place*." *Cammer*, 711 F. Supp. at 1284 (emphasis in original) (quoting 17 C.F.R. pt. 237 (1981)).

[22]    *See Inyx*, 2011 WL 2732544, at *9 (finding efficiency where company had market capitalization of approximately $22.4 million during class period).

F.R.D. at 217.  The "violations of the federal securities laws [alleged here] inflict[ed] economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." *Id.* "This is not a case in which all [Weatherford] investors have the means to maintain separate actions and invested large sums. Nor is this a case where the harm to each [Weatherford] investor is so highly individualized that each member has an interest in maintaining an individual action." *Lehman*, 2013 WL 440622, at *5.

Thus, "[r]equiring [plaintiffs'] claims to proceed as separate cases on behalf of multiple plaintiffs therefore would be inefficient, would fragment the recovery effort, and would diminish the incentives for pursuing the claims. *Tsereteli*, 283 F.R.D. at 217. Moreover, "'the exclusion of [Weatherford] class members who cannot afford separate representation would be neither 'fair' nor an 'adjudication' of their claims.'" *Auction Houses*, 193 F.R.D. at 168 (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996)).  Accordingly, the "superiority of the class action device [in this case] is clear." *Id.*

## IV.   CONCLUSION

For all of the reasons stated herein, Plaintiffs respectfully request that the Court: (i) certify the Class; (ii) appoint AFME and Georgia Firefighters as Class Representatives pursuant to Rule 23(a) and (b)(3); and (iii) appoint Lead Counsel as Class Counsel pursuant to Rule 23(g).

Dated:  April 1, 2013                           Respectfully submitted,

                                                KESSLER TOPAZ
                                                 MELTZER & CHECK, LLP


                                                */s/ Ramzi Abadou*
                                                RAMZI ABADOU
                                                ELI R. GREENSTEIN
                                                STACEY M. KAPLAN

JENNIFER L. JOOST
PAUL A. BREUCOP
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
(415) 400-3001 (fax)
rabadou@ktmc.com
egreenstein@ktmc.com
skaplan@ktmc.com
jjoost@ktmc.com
pbreucop@ktmc.com

- and -

STUART L. BERMAN
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
(610) 667-7056 (fax)
sberman@ktmc.com

*Lead Counsel for Lead Plaintiff*

LAW OFFICES OF
  CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
JENNIFER E. TRAYSTMAN
C. WILLIAM MARGRABE
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
(212) 986-0158 (fax)
ctrinko@trinko.com

*Liaison Counsel for Lead Plaintiff*

SAMUEL S. OLENS
Attorney General, State of Georgia
W. WRIGHT BANKS, JR.
Deputy Attorney General, State of Georgia
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
Telephone: (404) 656-3300
(404) 657-8733 (fax)

DARREN J. CHECK
Special Assistant Attorney General, State of Georgia
KESSLER TOPAZ
 MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
(610) 667-7056 (fax)
dcheck@ktmc.com

*Counsel for Georgia Firefighters' Pension Fund*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 1, 2013.

*/s/ Ramzi Abadou*
RAMZI ABADOU

## Mailing Information for a Case 1:11-cv-01646-LAK

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  rabadou@ktmc.com,knguyen@ktmc.com,arobles@ktmc.com

- **Mary Katherine Blasy**
  mblasy@scott-scott.com

- **Lionel Z. Glancy**
  lglancy@glancylaw.com,mmgoldberg@glancylaw.com,csadler@glancylaw.com,pbinkow@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Sarah A. Greenfield**
  sarah.greenfield@lw.com,olutosin.akinyode@lw.com

- **Eli R. Greenstein**
  egreenstein@ktmc.com,arobles@ktmc.com

- **Stacey M Kaplan**
  skaplan@ktmc.com

- **Evan Jay Kaufman**
  ekaufman@rgrdlaw.com

- **Robert John Malionek**
  robert.malionek@lw.com,rachel.feld@lw.com,jessica.bengels@lw.com,jason.grossman@lw.com

- **Kevin H. Metz**
  kevin.metz@lw.com,sarah.greenfield@lw.com

- **Erik D. Peterson**
  epeterson@ktmc.com,knguyen@ktmc.com,arobles@ktmc.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David R. Scott**
  drscott@scott-scott.com,efile@scott-scott.com

- **Curtis Victor Trinko**
  ctrinko@gmail.com

- **Peter A. Wald**
  peter.wald@lw.com,jessica.bengels@lw.com,jason.grossman@lw.com,#sfdocket@lw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jala Amsellen
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

Michael Goldberg
Glancy Binkow & Goldberg, LLP (CA)
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Howard G. Smith
Smith & Smith
3070 Bristol Pike
Suite 112
Bensalem, PA 19020
```