**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WEATHERFORD INTERNATIONAL SECURITIES LITIGATION | 11 Civ. 1646 (LAK) (JCF) <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>APPROVAL OF PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   FACTUAL BACKGROUND AND HISTORY OF THE ACTION ...................................5

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL............................6

    A.    The Settlement Negotiations Demonstrate Procedural Fairness .............................7

    B.    Application of the *Grinnell* Factors Supports Approval of the Proposed
          Settlement As Fair, Reasonable and Adequate ........................................................9

          1.    The Complexity, Expense and Likely Duration of the Litigation
               Support Approval of the Settlement...........................................................10

          2.    The Stage of the Proceedings and Amount of Discovery Support
               Approval of the Settlement.........................................................................12

          3.    The Risks of Establishing Liability and Damages Support Approval
               of the Settlement.........................................................................................14

               a.    Risks to Establishing Defendants' Liability ...................................14

               b.    Risks to Establishing Causation and Damages ...................................16

          4.    The Risks of Maintaining the Class Action Through Trial Support
               Approval of the Settlement.........................................................................17

          5.    Defendants' Ability to Withstand a Substantially Greater Judgment
               Does Not Suggest that the Settlement Is Unfair..........................................18

          6.    The Range of Reasonableness of the Settlement Amount in Light of
               the Best Possible Recovery and All the Attendant Risks of
               Litigation Support Approval of the Settlement ..........................................18

          7.    The Reaction of the Settlement Class to Date Supports Approval of
               the Proposed Settlement ...........................................................................20

IV.   THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE
      AND SHOULD BE APPROVED .....................................................................................21

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
      PURPOSES .................................................................................................................23

VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS
      OF THE PSLRA, RULE 23 AND DUE PROCESS .........................................................25

VII.  CONCLUSION ...........................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
No. 11 Civ. 2279 (CM), 2014 WL 1243799 (S.D.N.Y. Mar. 24, 2014) ................................ 12

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................ 17, 22

*In re Am. Int'l Grp. Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ............................................................................................ 24

*Amchem Prods. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231 (1997) ............................................................................. 24

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
Nos. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ... 8, 10, 14

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ............................................................................................. 19

*Basic Inc. v. Levinson*,
485 U.S. 224, 108 S. Ct. 978 (1988) ................................................................................. 3

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) .............................................................................. 13

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ........................................ 18

*Carson v. Am. Brands, Inc.*,
450 U.S. 79, 101 S. Ct. 993 (1981) ................................................................................. 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................................. 17

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) .............................................................................................. 9

*In re Citigroup Inc. Bond Litig.*,
08 Civ. 9522 (SHS), 296 F.R.D. 147 (S.D.N.Y. Aug. 20, 2013) ........................................ 26

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ......................................................................................*passim*

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................. 8, 9, 10, 18

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ......................................................................................... 8, 9, 18

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........ 7, 10, 17, 26

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................ 7

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................. *passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 636 (Nov. 15, 2013) ........................................................................................ 3, 18

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................. 11

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................... 7, 9, 21

*In re Initial Pub. Offerings Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................................. 21

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) ......................................................................................................... 15

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................ 21, 22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................... 24

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................................... 22

*Massiah v. Metroplus Health Plan, Inc.*,
    No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ....................... 19, 20

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    Nos. 02 MDL 1484(JFK), 02 Civ. 3176(JFK),
    2007 WL 3134742007 (S.D.N.Y. Feb. 1, 2007) .............................................................19-20

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................................... 25

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................21, 22

*Parker v. Time Warner Entm't Co., L.P.,*
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) ....................................................... 18

*In re Sadia S.A. Sec. Litig.,*
    No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ............................... 7

*Shapiro v. JPMorgan Chase & Co.,*
    Nos. 11 Civ. 8331 (CM)(MHD), 11 Civ. 7961 (CM),
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................... 14, 19

*Silberblatt v. Morgan Stanley,*
    524 F. Supp. 2d 425 (S.D.N.Y. 2007) ....................................................... 21

*In re Sony Corp. SXRD,*
    448 F. App'x. 85 (2d Cir. 2011) ................................................................ 7

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
    No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................... 11, 18

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................................................... 3

*Vargas v. Capital One Fin. Advisors,*
    No. 13 Civ. 3262, 2014 WL 960935 (2d Cir. Mar. 13, 2014) ............................... 25

*In re Veeco Instruments Inc. Sec. Litig.,*
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................... 7, 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................*passim*

*In re Warner Chilcott Ltd. Sec. Litig.,*
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........................... 26

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................... 17

*White v. First Am. Registry, Inc.,*
    No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ................... 10

**Statutes**

15 U.S.C. § 77z-1(a)(7) ................................................................ 25

15 U.S.C. § 78u-4(a)(7) ................................................................ 25

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................... 1, 24, 25, 26

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff and proposed Settlement Class Representative, American Federation of Musicians and Employers' Pension Fund ("AFME" or "Lead Plaintiff"), and additional named plaintiff and proposed Settlement Class Representative, the Georgia Firefighters' Pension Fund ("GFPF") (together, "Plaintiffs" or "Settlement Class Representatives"), respectfully submit this memorandum of law in support of their Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation.[1]

## I.   PRELIMINARY STATEMENT

Pursuant to the terms of the Stipulation, Plaintiffs, through their counsel, have obtained $52,500,000 in cash (the "Settlement Amount") for the benefit of the Settlement Class, in exchange for the dismissal of all claims brought in the above-captioned action (the "Action") and a full release of claims against Defendants[2] and the other Released Parties.[3]   Subject to Court approval, the proposed Settlement represents a substantial recovery for the Settlement Class and avoids the risks and expense of continued litigation, including the risk of recovering less than the

---

[1]   Unless otherwise indicated herein, capitalized terms shall have those meanings contained in the Stipulation of Settlement and Release dated January 28, 2014 (ECF No. 240-1) (the "Stipulation") and the Declaration of Eli R. Greenstein in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Greenstein Declaration" or "Greenstein Decl."), submitted herewith.   Unless otherwise noted, all emphasis is added and internal citations and footnotes are omitted.

[2]   Defendants are Weatherford International Ltd. ("Weatherford" or the "Company"), Bernard J. Duroc-Danner, Andrew P. Becnel, Jessica Abarca and Charles E. Geer, Jr.

[3]   The term "Released Parties" means: (1) Defendants; (2) Defendants' immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors, managers, attorneys, legal representatives, insurers, re-insurers, auditors and agents; (3) any person or entity that is or was related to or affiliated with any Defendant or in which any Defendant has or had a controlling interest and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, employees, officers, directors, managers, attorneys, assigns, auditors and agents of each of them; and (4) the present and former employees, officers, directors, managers, attorneys, assigns, auditors and agents of any of the foregoing.   See Stipulation at ¶1(cc).

Settlement Amount—or no recovery at all—after significant delay.  Moreover, to Lead Counsel's knowledge, the Settlement represents the *only* recovery for the Settlement Class arising from the conduct alleged in this Action, despite an ongoing three-year investigation by the SEC.

At every stage of the Action, Plaintiffs faced vigorous opposition from Defendants and aggressive defenses to Plaintiffs' claims.  Had the Settlement not been reached, the Settlement Class would have faced considerable obstacles in proving its case, particularly with respect to the elements of scienter, loss causation, and damages.  Indeed, following the Court's ruling on Defendants' motions to dismiss, the only remaining claims in the case were those arising from Weatherford's internal controls and Defendants' certifications pursuant to Sarbanes-Oxley (the "Internal Controls Misstatements").  Plaintiffs' other claims arising from Weatherford's restatements of its financial results and representations regarding its tax expenses and effective tax rate ("ETR") (the "Tax Accounting Misstatements") were dismissed from the Action entirely.  Accordingly, with respect to loss causation, Plaintiffs faced the significant risk of disaggregating losses and proving that the Company's stock price declines were the result of the disclosure of material weaknesses in its internal controls—as opposed to the Tax Accounting Misstatements or other confounding information alleged by Defendants.  Even if Plaintiffs could legally establish some loss causation, however, they still faced substantial risk that a jury could find that only a small fraction of the alleged damages were recoverable for the Internal Controls Misstatements.

With respect to scienter, given the complex tax accounting issues in the Action, including the interplay between GAAP and tax reporting under various foreign tax regimes in which Weatherford operated, Plaintiffs faced substantial risk in proving that the single remaining

Individual Defendant who made actionable statements (CFO Becnel) possessed the requisite level of recklessness or intent—as opposed to negligence or mismanagement.  In addition, Plaintiffs faced significant uncertainty and risk in connection with the Supreme Court's forthcoming decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 636 (Mem) (Nov. 15, 2013) ("*Halliburton II*") which will address the applicability and contours of the fraud-on-the-market presumption of reliance affirmed in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978 (1988).  Suffice it to say, an unfavorable decision in *Halliburton II* threatened to potentially limit or negatively impact the Settlement Class's ability to recover from the Defendants at all.

As detailed in the Greenstein Declaration, the Settlement was reached after nearly three years of intense litigation.  The Settlement is the fruit of well-informed and extensive arm's-length settlement negotiations between experienced and knowledgeable counsel with the assistance of a highly respected mediator, the Honorable Daniel Weinstein.  Greenstein Decl. at ¶¶6-7, 78-81.  "Judge Weinstein's role in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008).  Moreover, before the Settlement was reached, Plaintiffs, through the efforts of their counsel Kessler Topaz Meltzer & Check, LLP ("Lead Counsel") vigorously prosecuted their case for nearly three years, including through numerous stages of litigation such as: (i) conducting an extensive investigation into Plaintiffs' claims, including interviews of nearly 20 former Weatherford employees; (ii) researching and drafting a comprehensive consolidated complaint and two proposed amended complaints; (iii) opposing two motions to dismiss; (iv) consulting with multiple experts and consultants in the areas of, *inter alia*, tax accounting, foreign tax reporting, internal controls, loss causation, and damages;

(v) submitting extensive class certification briefing and engaging in rigorous class certification discovery, including expert and client depositions; (vi) engaging in extensive discovery, including reviewing approximately 2.3 million pages of documents produced by Defendants and various third parties; (vii) filing seven motions to compel, all of which were granted in part; and (viii) taking and/or defending 14 depositions and preparing for 10 additional depositions scheduled for the remaining two-week period prior to the January 24, 2014 discovery cutoff. Greenstein Decl. at ¶¶21-76.  Following the substantial completion of fact discovery and just prior to the exchange of expert reports, the parties reached an agreement in principle to settle the Action for $52,500,000.  *Id*. at ¶81.

Plaintiffs in this Action are the type of sophisticated institutional investors favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Both Plaintiffs have closely monitored and participated in this litigation, including the settlement negotiations leading to the resolution of the Action, and recommend that the Settlement be approved.  *See* Exhibits 3 and 4 to the Greenstein Declaration.  Further, Lead Counsel, a law firm with extensive experience in prosecuting securities class actions, strongly believes that the Settlement is in the best interests of the Settlement Class.  Greenstein Decl. at ¶¶85, 120.

In accordance with the Court's April 1, 2014 Order Concerning Proposed Settlement (ECF No. 249) (the "Notice Order"), the Court-authorized Claims Administrator, The Garden City Group, Inc. ("GCG"), mailed over 660,000 copies of the Notice and Claim Form (together, the "Notice Packet") to potential Settlement Class Members and nominees.[4]  Greenstein Decl. at ¶99.  As ordered by the Court and set forth in the Notice, any requests for exclusion from the

---

[4]      *See* Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Requests for Exclusion Received to Date (the "Fraga Aff."), at ¶¶2-10, attached as Exhibit 1 to the Greenstein Declaration.

Settlement Class are due to be received no later than June 8, 2014, and any objections to the Settlement, the Plan of Allocation and/or the request for attorneys' fees and reimbursement of litigation expenses are due to be received no later than June 13, 2014. To date, Lead Counsel has received only one objection (primarily related to the request for attorneys' fees and expenses). *Id.* at ¶¶101, 130. In addition, only six requests for exclusion from the Settlement Class have been received thus far. *Id.*; *see also* Fraga Aff. at ¶14.

Plaintiffs and Lead Counsel firmly believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant final approval of this Settlement, and deem the Plan of Allocation a fair and reasonable method for distributing the Net Settlement Fund to the Settlement Class.

## II.    FACTUAL BACKGROUND AND HISTORY OF THE ACTION

This Action involves the restatement of Weatherford's financial results for 2007-2010 and the Company's announcement of a material weakness in its internal controls. Greenstein Decl. at ¶¶9, 17. Specifically, the Complaint alleged that between April 25, 2007 and March 1, 2011 (the "Class Period") Defendants violated the federal securities laws by making materially false and misleading public statements regarding Weatherford's income tax results, its ETR and the adequacy of its internal controls. *Id.* at ¶17; *see also* Complaint (ECF No. 59) at ¶¶1, 4-18. Lead Plaintiff alleged that Weatherford understated its ETR largely to increase its net income and earnings per share, thereby creating the illusion of financial success during an otherwise difficult period for the Company. Greenstein Decl. at ¶17; Complaint at ¶¶5, 73-133. Lead Plaintiff further alleged that, for each quarter and year during the Class Period, Defendants Duroc-Danner and Becnel executed certifications pursuant to §§302 and 906 of the Sarbanes-Oxley Act of 2002, falsely representing that they had designed, reviewed and certified the

adequacy of Weatherford's internal controls.  Greenstein Decl. at ¶17; Complaint at ¶¶15, 141-

45.  Lead Plaintiff alleged that these misrepresentations artificially inflated the price of

Weatherford stock during the Class Period and that members of the proposed Settlement Class

suffered damages when the price of Weatherford stock declined on news causally connected to

Defendants' internal control misrepresentations.  Greenstein Decl. at ¶17; Complaint at ¶¶235-

41.

       For the sake of brevity and to avoid repetition, Plaintiffs respectfully refer the Court to

the accompanying Greenstein Declaration for a detailed discussion of the procedural history of

the Action.  Greenstein Decl. at ¶¶18-76.[5]

## III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

       A class action settlement must be presented to the Court for approval.  Fed. R. Civ. P.

23(e).  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2).  As a matter of public policy, "federal courts favor settlement,

especially in complex and large-scale disputes, so as to encourage compromise and conserve

judicial and private resources."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455

(S.D.N.Y. 2004).  *See also Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.

2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements,

particularly in the class action context.'").

       In ruling on final approval of class settlements, courts examine both the negotiating

process leading to the settlement (*i.e.*, procedural fairness), and the settlement's substantive

---

[5]     In addition to the Greenstein Declaration, Plaintiffs are also simultaneously submitting to
the Court, on behalf of Lead Counsel, the Memorandum of Law in Support of Lead Counsel's
Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Fee
Memorandum"). The Greenstein Declaration and Fee Memorandum are incorporated by
reference herein.

terms.  *See Visa*, 396 F.3d at 116; *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012);

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011).  The Court

may presume that a settlement negotiated at arm's-length by experienced counsel is fair and

reasonable.[6]  Moreover, recognizing that a settlement represents an exercise of judgment by the

negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber

stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough

investigation that it would undertake if it were actually trying the case."  *City of Detroit v.

Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) *abrogated on other grounds by Goldberger v.

Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000); *In re Sony Corp. SXRD*, 448 F. App'x. 85, 87

(2d Cir. 2011) ("[W]hen evaluating a settlement agreement, the court is not to substitute its

judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement

'into a trial or a rehearsal of the trial.'").

### A.      The Settlement Negotiations Demonstrate Procedural Fairness

The parties here negotiated the Settlement at arm's-length with the assistance of an

experienced mediator and former judge, the Honorable Daniel H. Weinstein (Ret.), *see*

Greenstein Decl. at ¶¶6-7, 78-81.  "The presumption in favor of the negotiated settlement in this

case is strengthened by the fact that settlement was reached [after protracted settlement

negotiations] supervised by Judge Weinstein."  *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,

No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010).  *See also*

---

[6]      *See IMAX*, 283 F.R.D. at 189; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011
WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011) (finding initial presumption of fairness attaches to
proposed settlement where it is "reached by experienced counsel after arm's length
negotiations"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL
4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("A proposed class action settlement enjoys a strong
presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of
arm's-length negotiations conducted by capable counsel, well-experienced in class action
litigation arising under the federal securities laws.").

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) (presumption of fairness and adequacy applied in part because "[s]ettlement was reached…with the assistance of Judge Daniel Weinstein, one of the nation's premier mediators in complex, multi-party, high stakes litigation") (collecting cases).   The extensive negotiation process was hard-fought by both sides and required the parties' careful analysis of complex factual and legal issues and the changing dynamics of the evidentiary record and legal landscape during the litigation.   Greenstein Decl. at ¶¶80-81.

The negotiation process also included a formal in-person mediation session in June 2013, the submission and exchange of detailed mediation statements, and intensive presentations and vigorous debate by the parties.   *Id*. at ¶81.   Although these negotiations did not resolve the matter, they did allow for an exchange of views on the strengths and weaknesses of the parties' respective positions.   Additional telephonic and in-person negotiations took place towards the end of 2013 with the continued assistance of Judge Weinstein.   *Id*. at ¶¶80-81.   In addition, both Plaintiffs took an active role in monitoring the settlement negotiation process, precisely as the PSLRA intended.   *See* Exhibits 3 and 4 to the Greenstein Declaration.[7]   After engaging in a comprehensive analysis of the merits and dynamics of this Action, including reviewing updated

---

[7]      *See In re Global Crossing*, 225 F.R.D. at 462; *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, Nos. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) ("Courts in this District have also commented on the procedural safeguards inherent in cases subject to the PSLRA, wherein the lawyers are not 'mere entrepreneurs acting on behalf of purely nominal plaintiffs'"); *Veeco*, 2007 WL 4115809, at *5 ("Moreover, under the PSLRA, a settlement reached...under the supervision and with the endorsement of a sophisticated institutional investor...is 'entitled to an even greater presumption of reasonableness....Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'").

merits and evidentiary submissions by the parties after discovery was substantially complete, Judge Weinstein presented the parties with a formal mediator's proposal, which both parties ultimately accepted to settle the Action.  Greenstein Decl. at ¶81.

Lead Counsel who negotiated the Settlement was fully informed of the strengths and weakness of Plaintiffs' claims.  Indeed, it was not until after nearly three years of contentious litigation, including an extensive investigation, significant motion practice and the substantial completion of fact discovery, that the parties reached an agreement in principle to settle the Action for $52,500,000.  Greenstein Decl. at ¶¶5, 77.  *See D'Amato*, 236 F.3d at 85 (presumption of fairness applies whether "the settlement resulted from 'arm's-length negotiations and . . . plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interest'"); *IMAX*, 283 F.R.D. at 189 (S.D.N.Y. 2012) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

> **B.     Application of the *Grinnell* Factors Supports Approval of the Proposed Settlement As Fair, Reasonable and Adequate**

The Second Circuit has identified nine factors to consider in determining whether a settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463, *see also Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) *cert denied, Suarez v. Charron*, 134 S. Ct. 1941 (2014); *Aeropostale*, 2014 WL 1883494, at *3.  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the

court should consider the totality of these factors in light of the particular circumstances.'" *Global Crossing*, 225 F.R.D. at 456. Additionally, in deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).

As demonstrated herein, and in the accompanying Greenstein Declaration, the proposed Settlement more than satisfies each of the foregoing *Grinnell* factors. Accordingly, it is the considered judgment of Plaintiffs and Lead Counsel that the Settlement represents a fair, reasonable and adequate resolution of the Action and warrants this Court's final approval.

### 1.     The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement

"[D]istrict courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aeropostale*, 2014 WL 1883494, at *5. "Indeed, the courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'" *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15. Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id.*; *AOL*, 2006 WL 903236, at *8 (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This Action was unquestionably complex. It involved difficult tax accounting concepts and the analysis of foreign intercompany transactions between dozens of Weatherford subsidiaries, including the tax treatment of intercompany dividends and hybrid investment instruments between numerous entities in various tax jurisdictions. Greenstein Decl. at ¶¶42, 73-

76, 94.  Accordingly, many of the documents obtained in discovery were highly specialized and technical in nature and required consultation with accounting and tax experts.  *Id*. at ¶¶73-76. Developing and synthesizing this highly technical tax accounting documentation into an easily digestible format for the Court and a jury was, and would continue to be, extremely time-consuming and expensive.  Further, even if Plaintiffs established a compelling evidentiary record of liability, any recovery could be reduced, delayed or wiped out entirely by defenses to loss causation, damages and the establishment of proportionate fault.  *Id*. at ¶¶88-93.  As demonstrated throughout the course of this Action, Defendants and their experienced counsel were committed to forcefully defending this Action through and beyond trial and would have continued to vigorously contest Plaintiffs' claims.

The expense and delay of continued litigation also counsel in favor of the Settlement. Although Plaintiffs have litigated this Action for nearly three years and were nearing the completion of fact discovery when the Settlement was reached, the costs associated with the completion of discovery, including extensive expert discovery, summary judgment motions, *Daubert* motions, a lengthy and complicated trial and the inevitable post-trial appeals, would have been substantial.  As a result, additional years could pass before the class would receive a recovery, if any.  *In re Sony SXRD Rear Projection Television Class Action Litig*., No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("the complexity, expense and likely duration of the litigation going forward weigh in favor of approval of the Settlement. . . . Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all."); *Hicks v. Morgan Stanley & Co*., No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair

settlement today as opposed to an uncertain future settlement or trial of the action.")  Notably, in one of the most recent PSLRA cases to proceed through trial, *Lawrence E. Jaffee Pension Plan v. Household International, Inc., et al.*, Case No. 02-CV-5893 (N.D. Ill.), although the case was originally filed in 2002 and received a favorable jury verdict in 2009, Plaintiffs have yet to recover any of the damages awarded by the jury.  In fact, the first appeal of the judgment is currently scheduled for May 28, 2014, twelve years after the case was filed and five years after the jury reached its verdict.  This factor also was considered as part of the total mix of information in settling the claims now on favorable terms for the Settlement Class.

In sum, the complexity, expense and delay of continued litigation would be substantial. Unlike protracted litigation with an uncertain outcome, the proposed $52.5 million Settlement provides Settlement Class Members with prompt, efficient, and guaranteed relief.  Accordingly, this factor favors approval of the Settlement.

> **2.      The Stage of the Proceedings and Amount of<br>Discovery Support Approval of the Settlement**

When courts "look [ ] to the 'stage of the proceedings and the amount of discovery completed,'" they "focus[] on whether the plaintiffs 'obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 Civ. 2279 (CM), 2014 WL 1243799, at *6 (S.D.N.Y. Mar. 24, 2014); *see also Visa*, 396 F.3d at 118.  This requirement "is intended to assure the [c]ourt 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *Global Crossing*, 225 F.R.D. at 458.

Here, the Settlement was reached after nearly three years of intensive litigation and discovery, during which time Plaintiffs conducted a detailed investigation and exhaustive research into the applicable law; drafted several comprehensive amended complaints;

aggressively pursued and secured multiple amended Answers from Defendants; reviewed approximately 2.3 million pages of documents; filed numerous discovery motions; conducted, defended, or prepared for the depositions of 24 witnesses; and consulted extensively with multiple experts in conjunction with the pleadings, discovery and the preparation of formal expert reports.   Greenstein Decl. at ¶¶21-72.   Perhaps most importantly, through its seven motions to compel and numerous depositions, Plaintiffs were able to generate a robust evidentiary record to support a full and considered analysis of the strengths and weaknesses of Plaintiffs' claims.   The record not only included the typical discovery obtained in PSLRA cases, but also had the benefit of certain materials generated during a comprehensive independent Audit Committee investigation of the allegations at issue, including dozens of witness interview memoranda.   This record allowed Plaintiffs to further scrutinize and assess the strengths and pitfalls of Plaintiffs' remaining claims.   Greenstein Decl. at ¶¶58-60; ECF Nos. 217, 235.

In sum, the knowledge and insight gained by Plaintiffs and Lead Counsel following years of investigating, developing and fine-tuning their claims, conducting extensive discovery, reviewing and analyzing millions of pages of evidence, deposing current and former employees and third party auditors, and the settlement negotiations and mediation process itself, provided Plaintiffs and Lead Counsel with more than sufficient information to make intelligent, informed appraisals of the strengths and weaknesses of the Settlement Class's claims, Defendants' defenses, and the likelihood of obtaining a larger recovery for the Settlement Class had this Action continued to be litigated.   *See In re Bear Stearns Cos*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (parties had requisite knowledge to "gauge the strengths and weaknesses of their claims and adequacy of settlement" where they "conducted extensive investigations,

obtained and reviewed millions of pages of documents, and briefed and litigated a number of significant legal issues").

Consequently, Plaintiffs and Lead Counsel clearly had a "sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy" of the Settlement. *AOL*, 2006 WL 903236, at *10.  This factor strongly supports approval of the Settlement.

### 3.   The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing this factor, the Court is not required to "decide the merits of the case[,] resolve unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 998 (1981), or to "foresee with absolute certainty the outcome of the case," *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331 (CM)(MHD), 11 Civ. 7961 (CM), 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 24, 2014).  "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459.  While Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were considerable risks and uncertainties to pursuing the Action through summary judgment, trial and appeals.  The most significant risks and uncertainties to continued litigation, which were extensively considered by Lead Counsel and informed its recommendation of the Settlement to Plaintiffs, are discussed below.

### a.   Risks to Establishing Defendants' Liability

Plaintiffs faced considerable risks to establishing Defendants' liability if the Action continued.  First, Plaintiffs faced the risk that the Court or a jury would find that the complexity of Weatherford's tax accounting, particularly the foreign intercompany tax and dividend exclusion transactions underlying the restatements at issue here, made it less likely that a high-level executive such as Becnel, would be aware of the granular tax accounting errors and

-14-

processes underlying the ultimate conclusion that a material weakness existed in internal controls. *Id*. at ¶94. This risk was even more acute because Weatherford operated approximately 100 subsidiaries in vastly different foreign tax jurisdictions, adding multiple layers of accounting and tax reporting complexity that Defendants would seek to emphasize and exploit at summary judgment and trial. *Id*. For example, Defendants would have likely argued that in certifying the accuracy of the Company's financial results and the adequacy of Weatherford's internal controls, Becnel reasonably relied on the expertise of Weatherford's outside auditors, tax consultants, internal tax managers, and the Company's Internal Audit department. *Id*. at ¶95. Even if Plaintiffs could prove, moreover, that lower-level tax personnel were reckless in disregarding internal controls or incorrectly accounting for income taxes to boost results, Plaintiffs faced the risk that the Court on summary judgment, or the jury at trial, would find that: (a) those employees did not make any statements; (b) the employees were not senior enough in the corporate hierarchy to impute scienter to the Company itself; or (c) the only remaining Individual Defendant that made an actionable statement (CFO Becnel) was not sufficiently aware of adverse facts and red flags indicating that his statements were fraudulent. *Id*. Thus, Plaintiffs faced the risk that they could not prove liability or scienter consistent with *Janus Capital Group*, *Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011). *Id*.

Simply put, given the complexity of tax accounting in general, and the added dynamic of Weatherford's corporate structure, proving that Defendants knew, or were reckless in not knowing, that a "material weakness" existed in the Company's tax accounting controls was far from certain. Additionally, Plaintiffs had to overcome the inference repeatedly asserted by Defendants that Weatherford was simply plagued by the complexity of its tax structure and its rapid growth such that Defendants either negligently or mistakenly failed to appreciate the

severity of its tax accounting errors and weaknesses in internal controls. As a result, Plaintiffs faced significant risks in establishing that Defendants acted with the requisite scienter necessary to sustain a securities fraud claim. This risk was underscored by the fact that the Court had already dismissed claims arising from the Company's financial restatements and Defendants' Tax Accounting Misstatements for failure to plead scienter. Greenstein Decl. at ¶122.

### b.      Risks to Establishing Causation and Damages

Plaintiffs also faced formidable challenges to establishing loss causation and damages for the remaining internal control claims. With respect to loss causation, Plaintiffs faced a substantial risk that they would be unable to "disaggregate" the portion of losses attributable to Defendants' Internal Controls Misstatements from losses attributable to other confounding information, *i.e.*, the announcement of a $500 million restatement due to tax accounting errors, and negative news from the Middle East regarding oil prices. Greenstein Decl. at ¶88. Indeed, Plaintiffs faced the possibility moving forward that a significant portion of the alleged losses would be apportioned to the Tax Accounting Misstatements (*i.e.*, the claims that were previously dismissed), as opposed to revelations regarding Weatherford's internal controls. *Id*.

Additionally, Defendants may have challenged whether the Internal Controls Misstatements, standing alone, were material such that they were significantly likely to alter the total mix of information and influence investors' decisions to purchase, hold or sell Weatherford stock. Although Plaintiffs would argue that Defendants' Internal Controls Misstatements were inextricably intertwined with, and inseparable from, the Tax Accounting Misstatements such that the former misstatements were still a "substantial cause" of the stock price declines alleged in the Complaint, Plaintiffs still faced a significant risk that such an argument would be rejected during summary judgment, trial, post-trial or appellate proceedings. *Id*. at ¶89.

Further, even if Plaintiffs could establish at summary judgment and trial that Defendants' Internal Controls Misstatements were a factor in causing the alleged stock price declines, Plaintiffs still faced a significant risk that the Court and/or a jury would find that only a small fraction of the total damages can be apportioned to the Internal Controls Misstatements, thus significantly reducing any recovery for the class.  Moreover, Defendants would have likely asserted a proportional fault defense, asserting that the Company relied on third parties, including Weatherford's auditor who issued opinions on Weatherford's financial results and internal controls during the Class Period.  Greenstein Decl. at ¶90.  The parties' differing arguments on loss causation and damages hinged upon extensive expert discovery and testimony. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Although Plaintiffs believe they would have been able to present expert testimony to meet their burden on loss causation and damages, "establishing damages at trial would lead to a 'battle of experts' … with no guarantee whom the jury would believe."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).[8]  As a result, this factor further supports approval of the Settlement.

### 4.    The Risks of Maintaining the Class Action <u>Through Trial Support Approval of the Settlement</u>

While Plaintiffs believe that this Action satisfies each element of Rule 23 and could have been maintained as a class action through trial, the Settlement was reached before the Court issued an opinion on Plaintiffs' motion for class certification.  Even if this Court had certified the class, moreover, no class certification decision is immune from a possible reversal either upon

---

[8]      *See also FLAG Telecom*, 2010 WL 4537550, at *18 ("The jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable."); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants").

motion of a party, by the Court, or on appeal.  *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings.").  Here, this risk was particularly acute given that the Supreme Court's decision in *Halliburton II* was on the horizon at the time of Settlement. *See Aeropostale*, 2014 WL 1883494, at *9 ("[T]he law of class actions is developing at a rapid clip, and it is always possible that some new Supreme Court decision would counsel in favor of decertification.").  The Settlement avoids any uncertainty with respect to these issues, and therefore this factor weighs in favor of approving the Settlement.

### 5.   Defendants' Ability to Withstand a Substantially Greater Judgment Does Not Suggest that the Settlement Is Unfair

While Defendants likely could withstand an even greater judgment against them, the Second Circuit has made clear that "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86.  Indeed, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Sony*, 2008 WL 1956267, at *8.  The mere fact that a defendant "is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate," especially where, as here, the other *Grinnell* factors weigh heavily in favor of settlement approval.  *See Parker v. Time Warner Entm't Co.*, *L.P.*, 631 F. Supp. 2d 242, 261 (E.D.N.Y. 2009).  This factor does not, therefore, alter the conclusion that the Settlement here is reasonable and fair.

### 6.   The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement

Courts typically combine their analysis of the final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of

reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.  *Accord Global Crossing*, 225 F.R.D. at 460.  In analyzing these two factors, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *Grinnell*, 495 F.2d at 462.  "The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012).  Rather, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119.  Moreover, the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *JPMorgan Chase*, 2014 WL 1224666, at *11.

Here, although Plaintiffs' damages expert estimates that likely recoverable damages approximate $500 million, that amount does not take into account any of Defendants' arguments regarding disaggregation, loss causation, damages or proportionate fault.  Greenstein Decl. at ¶87.[9]  In contrast to the delays, costs and uncertainty of continued litigation, the proposed

---

[9]     For example, Defendants would have continued to vigorously challenge Plaintiffs' damages calculation and theory of causation, especially given the dismissal of all claims arising from the Tax Accounting Misstatements and the overall uncertainty of disaggregating losses. Greenstein Decl. at ¶¶88-92.  *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved...[r]ather, the percentage recovery, must represent a material percentage recovery to plaintiff in light of all the risks..."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, Nos. 02 MDL 1484(JFK), 02 Civ. 3176(JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) *(Cont'd)*

Settlement confers an immediate and certain payment for the benefit of the Settlement Class. The Settlement is even more significant given the considerable risks involved in the Action as set forth above and in the Greenstein Declaration. Plaintiffs and Lead Counsel carefully and thoroughly analyzed these risks when negotiating the present Settlement. Accordingly, the proposed Settlement is a favorable result for the Settlement Class in light of the range of possible recoveries and the risks of continued litigation. *Massiah*, 2012 WL 5874655, at *5 ("when a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road', settlement is reasonable under this factor.").

### 7. The Reaction of the Settlement Class to Date Supports Approval of the Proposed Settlement

Pursuant to the terms of the Notice Order, GCG has mailed more than 660,000 copies of the Notice Packet to potential Settlement Class Members and nominees. *See* Fraga Aff. at ¶¶2-10. In addition, the Summary Notice was published in the national edition of *The Wall Street Journal* and *Investor's Business Daily* and transmitted over *PR Newswire*. *Id*. at ¶11. The Notice sets out the essential terms of the Settlement and informs potential members of the Settlement Class of, among other things, their right to request exclusion from the Settlement Class or object to any aspect of the Settlement, as well as the procedure for submitting a Claim Form in order to be potentially eligible to receive a payment from the Settlement.

The deadline for objecting to the Settlement, the Plan of Allocation and/or Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses is June 13, 2014. To date, there has been only one objection received, and only six requests for

---

(finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

exclusion from the Settlement Class.  Greenstein Decl. at ¶101.[10]  Plaintiffs will address all objections, as well as requests for exclusion, in their reply submission to be filed with the Court on June 20, 2014.  *Id*. at ¶101, n.4.

In sum, the *Grinnell* factors—including the complexity, expense and delay of further litigation, the well-developed stage of the proceedings and the substantial risks of continued litigation—support a finding that the Settlement is fair, reasonable and adequate.

## IV.   THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate.  *See IMAX*, 283 F.R.D. at 192; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate."). Generally, "[a] plan of allocation that reimburses class members based on the extent of their injuries is [] reasonable."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  Plans of allocation, however, need not be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Rather, broad classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the settlement fund.  *Id*. at 133-35.  A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis."  *Maley*, 186 F. Supp. 2d at 367; *see In re Initial Pub. Offerings Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009).

---

[10]   A copy of the objection submitted by Stephen Shoeman is attached to the Greenstein Declaration as Exhibit 2.  Mr. Shoeman—who objects primarily to the attorneys' fees and expenses set forth in the Notice—has not provided any documentation to prove that he is a member of the Settlement Class as required by the Court's Notice Order and as set forth in the Notice.

In determining the fairness, reasonableness and adequacy of a proposed allocation plan, Courts give considerable weight to the opinion of experienced class counsel.[11]  Here, Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages expert and believes that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among eligible Settlement Class Members.

If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator, in accordance with the requirements established by the Court, and who are approved for payment ("Authorized Claimants").  Although not a formal damages study, the Plan of Allocation reflects Plaintiffs' damages expert's analysis, including a review of publicly available information regarding Weatherford and statistical analysis of the price movements of Weatherford common stock and the price performance of relevant market and peer indices during the Settlement Class Period.  Greenstein Decl. at ¶103.

Pursuant to the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each share of Weatherford common stock purchased or otherwise acquired during the Settlement Class Period (i.e., the period between April 25, 2007 and March 1, 2011, inclusive) that is listed in the Claim Form and for which adequate documentation is provided.  Id. at ¶104.  In order to have a Recognized Loss Amount, eligible Weatherford common stock must have been held

---

[11]     See In re Marsh ERISA Litig., 265 F.R.D. 128, 145 (S.D.N.Y. 2010) ("In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel."); Am. Bank Note Holographics, 127 F. Supp. 2d at 429-430 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel....As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

through January 25, 2010 or March 1, 2011.  *Id.* at ¶105 & n.5.[12]  The sum of a claimant's Recognized Loss Amounts will be the claimant's Recognized Claim.  The Net Settlement Fund will be allocated on a *pro rata* basis to Authorized Claimant's based on each Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.  Under the Plan of Allocation, if a claimant's *pro rata* payment calculates to less than $10.00, no distribution will be made to that claimant.  *Id.* at ¶106.

To date, there have been no objections to the Plan of Allocation.  Accordingly, for all of the reasons set forth herein and in the Greenstein Declaration, the Plan of Allocation is fair and reasonable, and should be approved.

## V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

For purposes of effectuating the Settlement, the parties stipulated to certification of the following Settlement Class:

> All Persons who purchased or otherwise acquired Weatherford common stock between April 25, 2007 and March 1, 2011, inclusive, and who were allegedly damaged thereby. Excluded from the Settlement Class are Defendants and Weatherford's officers, affiliates, and directors, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which a Defendant has a controlling interest. Also excluded from the Settlement Class are any persons or entities who exclude themselves from the Settlement Class by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.

In its April 1, 2014 Notice Order, the Court found upon a preliminary evaluation, and for purposes of the Settlement only, that the Settlement Class met the requirements of Rule 23(a)

---

[12]      Recognized Loss Amounts also take into account the PSLRA's statutory limitation on recoverable damages, whereby losses on eligible Weatherford common stock cannot exceed the difference between the purchase price paid for the stock and the average price of the stock during the 90-day period subsequent to the Settlement Class Period if the share was held through May 27, 2011 (*i.e.*, the end of the 90-day period) and losses on eligible Weatherford common stock purchased or otherwise acquired during the Settlement Class Period and sold *during* the 90-day period subsequent to the Settlement Class Period cannot exceed the difference between the purchase price paid for the stock and the average price of the stock during the portion of the 90-day period elapsed as of the date of sale.  *Id.  See also* Fraga Aff. Exhibit A at 9.

and (b)(3) of the Federal Rules of Civil Procedure, and directed that notice of the Settlement be provided to potential members of the Settlement Class. Plaintiffs respectfully move the Court for final certification of the Settlement Class, certification of the Settlement Class Representatives, and approval of Class Counsel.[13]

"The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement." *In re Marsh & McLennan Cos.*, *Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)); *see also In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 238-39 (2d Cir. 2012). While a settlement class, like other certified classes, must satisfy the requirements of Rules 23(a) and (b), the manageability concerns of Rule 23(b) are not at issue when certifying a settlement class. *Amchem Prods. v. Windsor*, 521 U.S. 591, 593, 117 S. Ct. 2231, 2235 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested").

Here, the proposed Settlement Class preliminarily certified by the Court readily satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Nothing has changed to alter the propriety of certification and, for all the reasons stated in Plaintiffs' prior submission (ECF No. 240, pp. 4-8), incorporated herein by reference, Plaintiffs request that the Court reiterate its prior ruling, certifying (i) the Settlement Class for purposes of effectuating the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) Plaintiffs as Settlement Class Representatives; and (iii) Lead Counsel as Class Counsel.

---

[13]     The proposed Settlement Class Representatives are the Court-appointed Lead Plaintiff, AFME, and additional named plaintiff GFPF. *See* ECF No. 249 at ¶4.

## VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF THE PSLRA, RULE 23 AND DUE PROCESS

Notice to class members of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Visa*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, No. 13 Civ. 3262, 2014 WL 960935, at *3 (2d Cir. Mar. 13, 2014). "Notice need not be perfect" or received by every class member, but instead be reasonable under the circumstances."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008); *see* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal.").  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *Id.* (citing *Visa*, 396 F.3d at 114).

Both the substance of the Notice as well as the method through which it was disseminated to potential members of the Settlement Class satisfies these standards.  The Court-approved Notice includes all of the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§77z-1(a)(7), 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted against Defendants; (ii) a definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the proposed Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and expenses that will be sought; (vii) a description of the right to request exclusion from the Settlement Class or object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on members of the Settlement Class.  The Notice also provides recipients with information on how to submit a Claim Form in order to be potentially eligible to receive a distribution from the Settlement.

Further, in accordance with the Court's Notice Order, as of May 21, 2014, GCG has mailed over 660,000 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees.  Fraga Aff. at ¶10.  To disseminate the Notice Packets, GCG used data received from the Company's transfer agent regarding shareholder names and addresses during the Settlement Class Period.  *Id*. at ¶¶3-6.  GCG also mailed copies of the Notice Packet to the largest and most common U.S. banks, brokerage firms, and nominees contained in GCG's proprietary mailing database, as well as the names and addresses of additional potential Settlement Class Members provided to GCG by nominees.  *Id*. at ¶¶7-9.

In addition, GCG caused the Summary Notice to be published in the national edition of *The Wall Street Journal* and *Investor's Business Daily* and transmitted over *PR Newswire* on April 9, 2014.  *Id*. at ¶11.  In addition, GCG established a toll-free informational telephone line and caused information regarding the Settlement to be posted on the website specifically established for the Settlement, www.WeatherfordSecuritiesLitigationSettlement.com, which provides access to, among other important documents, downloadable copies of the Notice, Summary Notice and Claim Form.  *Id*. at ¶¶12-13.

This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by publication of a summary notice in two widely-circulated publications and an informative website, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see*, *e.g.*, *In re Citigroup Inc. Bond Litig.*, 08 Civ. 9522 (SHS), 296 F.R.D. 147, 154 (S.D.N.Y. Aug. 20, 2013); *FLAG Telecom*, 2010 WL 4537550, at *13; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

VII.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court approve the

proposed Settlement as fair, reasonable and adequate; approve the Plan of Allocation as fair and

reasonable; and certify the Settlement Class for purposes of effectuating the Settlement.

Dated:  May 27, 2014                     Respectfully submitted,

                                         KESSLER TOPAZ
                                          MELTZER & CHECK, LLP


                                          *s/ Eli R. Greenstein*
                                         ELI R. GREENSTEIN
                                         STACEY M. KAPLAN
                                         JENNIFER L. JOOST
                                         One Sansome Street, Suite 1850
                                         San Francisco, CA 94104
                                         Telephone: (415) 400-3000
                                         (415) 400-3001 (fax)
                                         egreenstein@ktmc.com
                                         skaplan@ktmc.com
                                         jjoost@ktmc.com

                                         - and -

                                         STUART L. BERMAN
                                         DAVID KESSLER
                                         280 King of Prussia Road
                                         Radnor, PA 19087
                                         Telephone:  (610) 667-7706
                                         (610) 667-7056 (fax)
                                         sberman@ktmc.com
                                         dkessler@ktmc.com

                                         *Lead Counsel for Plaintiffs*

                                         LAW OFFICES OF
                                          CURTIS V. TRINKO, LLP
                                         CURTIS V. TRINKO
                                         16 West 46th Street, 7th Floor
                                         New York, NY 10036
                                         Telephone: (212) 490-9550
                                         (212) 986-0158 (fax)
                                         ctrinko@trinko.com

                                         *Liaison Counsel for Plaintiffs*

SAMUEL S. OLENS
Attorney General, State of Georgia
W. WRIGHT BANKS, JR.
Deputy Attorney General, State of Georgia
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
Telephone: (404) 656-3300
(404) 657-8733 (fax)

DARREN J. CHECK
Special Assistant Attorney General, State of Georgia
KESSLER TOPAZ
  MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
(610) 667-7056 (fax)
dcheck@ktmc.com

*Counsel for Georgia Firefighters' Pension Fund*

CERTIFICATE OF SERVICE

On this 27th day of May, 2014, I hereby caused a true and correct copy of the foregoing document to be served via Overnight Mail upon:

Mr. Stephen Schoeman
101 Jefferson Avenue
Westfield, NJ  07090

_s/ Eli R. Greenstein_
ELI R. GREENSTEIN