**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WEATHERFORD INTERNATIONAL SECURITIES LITIGATION | 11 Civ. 1646 (LAK) (JCF) <br><br> <u>CLASS ACTION</u> |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES <u>AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  ARGUMENT ...............................................................................................................3

    A.  The Schoeman Objection Should be Overruled ....................................................3

    B.  The Brown Objection Should be Rejected ............................................................5

        1.  The Requested Fee is Fair, Reasonable and Supported by the *Goldberger* Factors, the Settlement Class and Sophisticated Institutional Investor Plaintiffs ....................................................................7

            a.  Plaintiffs Faced Substantial Risks in this Action ............................7

            b.  The Allocation of Work Performed by Lead Counsel in this Action is Reasonable ....................................................10

            c.  Lead Counsel's Staff Attorney Billing Rates in this Action are Reasonable ....................................................12

        2.  The *Cy Pres* Provision Contained in the Plan of Allocation is Supported by Second Circuit Law and Prior Orders of This Court ..................................................................................................15

        3.  Mr. Brown's Contention That the Settlement Improperly Favors Lead Counsel and the Settlement Class Representatives Over the Settlement Class Is Unsupported and Should Be Rejected ..................................................................................16

            a.  The Timing of Payment of Attorneys' Fees Is a Standard Term Approved by Numerous Courts, Including This Court ....................................................18

            b.  Mr. Brown's Reliance on *Eubank* to Assert that the Settlement is Unfair is Misguided ....................................19

III.  CONCLUSION ..........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                    <u>Page(s)</u>

*Barnes v. FleetBoston Fin. Corp.*,
    No. 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006)...........................................6

*Caiafa v. Sea Containers Ltd.*,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007) .....................................................................................8

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2011) ................................................................................................15

*Eubank v. Pella Corp*,
    Nos. 13-2091, *et al.*, 2014 WL 2444388 (7th Cir. June 2, 2014)...........................................19

*Feder v. Elec. Data Sys. Corp.*,
    248 F. App'x 579 (5th Cir. 2007)............................................................................................4

*Goldberger v. Integrated Resources, Inc.*,
    209 F. 3d 43 (2d Cir. 2000) ..............................................................................................7, 9

*In re Airline Ticket Commission Antitrust Litig.*,
    268 F. 3d 619 (8th Cir. 2001) ..............................................................................................15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. Apr. 11, 2013) ............................................................................16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    916 F. Supp. 2d 454 (S.D.N.Y. 2013) ...................................................................................3

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04 Civ. 8141 (DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ..................................17

*In re Bisys Sec. Litig.*,
    No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007).................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)................................................................................................17

*In re Citigroup Inc. Securities Litigation*,
    965 F. Supp. 2d 369 (2013)..............................................................................................4, 12

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004)........................................................................................2, 16

*In re Initial Pub. Offering Sec. Litig.*,
   721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) ............................................................ 6

*In re Livingsocial Mktg. & Sales Practice Litig.*,
   No. 11-cv-0745, 2013 WL 1181489 (D.D.C. Mar. 22, 2013) ................................ 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................. 14-15, 18

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
   No. 09-MD-2027-BSJ, slip. op. (S.D.N.Y. Sept. 13, 2011) ............................... 17-18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................... 17

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................ 14, 17

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 14

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) .................................................................................... 7

*Missouri v. Jenkins*,
   491 U.S. 274, 109 S. Ct. 2463 (1989) .................................................................. 14

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) .............................................................................. 6

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund*
   *v. Fairfax Fin. Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012) ...................................................................... 8

*Sewell v. Bovis Lend Lease LMB, Inc.*,
   No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 20, 2012) ................................ 2

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................. 2, 14

## STATUTES

15 U.S.C. §78u-4(a)(4) ........................................................................................... 17

Plaintiffs respectfully submit this reply memorandum in further support of: (i) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (ECF No. 250) and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 252).[1]

## I.   <u>INTRODUCTION</u>

In accordance with the Court's April 1, 2014 Notice Order, the Court-appointed claims administrator, The Garden City Group, Inc. ("GCG"), has disseminated nearly one million Notices to potential Settlement Class Members and nominees.[2]  In addition, the Summary Notice was published in the national edition of *The Wall Street Journal* and *Investor's Business Daily* and over *PR Newswire*, and both the Notice and Summary Notice were made available on the settlement website, www.weatherfordsecuritieslitigationsettlement.com.  The Notice informed recipients of, *inter alia*, the terms of the Settlement and Plan of Allocation and Lead Counsel's

---

[1]    Capitalized terms used herein shall have those meanings contained in the Stipulation of Settlement and Release dated January 28, 2014 (ECF No. 240-1) and the Declaration of Eli R. Greenstein in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 254).  Unless otherwise noted, all emphasis is added and internal citations and footnotes are omitted.  All "Ex." references are to the exhibits attached to the Declaration of Eli R. Greenstein in Support of Plaintiffs' Reply Memorandum in Further Support of (I) Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorney's Fees and Reimbursement of Litigation Expenses, filed concurrently herewith.

[2]    *See* Supplemental Affidavit of Jose C. Fraga (the "Supplemental Fraga Aff."), submitted on behalf of GCG, Ex. A, at ¶4.  As described in a separate letter being submitted to the Court today, due to belated initial requests for Notices made by four nominees (including two nominees with a large number of clients who are potential Settlement Class Members) in violation of the Court's Notice Order, a substantial number of additional Notices were recently mailed to potential Settlement Class Members.  In order to allow these potential Settlement Class Members to exercise their rights, Lead Counsel has requested the Court's endorsement of the following deadline extensions for these potential Settlement Class Members as follows: (i) July 28, 2014 as the deadline to request exclusion or object to any aspect of the Settlement, and (ii) October 6, 2014 as the deadline to submit a Claim Form in order to be potentially eligible to receive a distribution from the Net Settlement Fund.

intention to apply to the Court for attorneys' fees not to exceed $12.6 million and reimbursement of expenses up to $1.5 million, which amount includes up to $25,000 in reimbursement to Plaintiffs.  The deadlines to request exclusion from the Settlement Class or to file an objection to the Settlement, or any aspect thereof, have now passed.

The Settlement Class's response to the Settlement to date has been overwhelmingly positive.  Not a single institutional investor has objected to any portion of the Settlement. Indeed, Lead Counsel has received only two objections to date, both of which are meritless and should be rejected.[3] The first objection, submitted by Stephen Schoeman (the "Schoeman Objection") fails to provide any documentation or supporting evidence to establish membership in the Settlement Class—a threshold standing requirement to object.[4]  The Schoeman Objection is also premised on material inaccuracies, such as the assertion that Lead Counsel is requesting "fees totaling $52,600,000" an amount greater than the entire $52.5 million settlement.  Exs. C & D, Schoeman Obj. at 1.  Accordingly, the Schoeman Objection is both procedurally and substantively defective and should be overruled.

---

[3]    *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118, 119 (2d Cir. 2005) ("the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry").  *See also Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012) ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457-58 (S.D.N.Y. 2004) (six objections out of a class of approximately one million was "vanishingly small" and "constitutes a ringing endorsement of the settlement by class members").  In addition, a total of fourteen requests for exclusion from the Settlement Class have been received to date, representing a minuscule fraction of the nearly one million Notices mailed to potential Settlement Class Members and nominees and further underscoring the positive reaction by the Settlement Class to date.  *See* Supplemental Fraga Aff., Ex. A, at ¶15.  These exclusion requests (based upon the information provided) represent less than 2,000 shares of Weatherford common stock in the aggregate.

[4]    Attached as Exs. B, C and D are letters received from Mr. Schoeman dated April 25, 2014, May 29, 2014 and May 30, 2014, respectively.

The second objection was submitted by Jeff M. Brown (the "Brown Objection") (attached as Ex. E), a Boca Raton attorney and serial "professional" objector who routinely seeks out class action settlements and fee requests for the purpose of lodging unsupported objections—only to later withdraw those objections or fail to defend them at final approval hearings.  *See* §II(B), *infra*.  Notably, Mr. Brown failed to comply with the Court's Notice Order which requires objectors to provide a "*list of other cases* in which the objector or the objector's counsel have appeared either as settlement objectors or as counsel for objectors in the preceding five years."  ECF No. 249 at ¶13.  As an attorney and seasoned professional objector, Mr. Brown cannot claim ignorance regarding the express requirements of the Court's Notice Order.

In addition to procedural infirmities, the Brown Objection is also substantively meritless.  Mr. Brown makes boilerplate arguments that are either inapplicable to the Settlement record here, or directly contradicted by arguments made in his prior (rejected) settlement objections.  *See* §II(B), *infra*.  This type of assembly-line objection adds nothing to the Court's consideration of the fairness, adequacy or reasonableness of the proposed Settlement.

Accordingly, and for all the reasons set forth in Plaintiffs' opening briefs filed with the Court on May 27, 2014 (the "Opening Papers"), the two objections should be overruled, and the Settlement, Plan of Allocation and request for fees and expenses should be approved.

## II.   ARGUMENT

### A.   The Schoeman Objection Should be Overruled

As a threshold matter, Mr. Schoeman—a retired attorney—fails to provide documentation establishing his membership in the Settlement Class and, thus, his standing to object.  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 459 (S.D.N.Y. 2013) (it is "uncontested that [an objector who is not a class member] does not have standing under Rule 23

to object to the Settlement").  Bare assertions of class membership do not establish standing.  *See Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 581 (5th Cir. 2007) (holding that an objector who produced no evidence to prove his class membership lacked standing to object to settlement, and stating that "[a]llowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process"); *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379 (S.D.N.Y. 2013) (excluding objections "from individuals who did not provide the required evidence of class membership or who provided evidence indicating they were not class members").  For this reason alone, Mr. Schoeman's objection should be rejected.

Even if Mr. Schoeman could establish standing, his objection is baseless.   Mr. Schoeman's primary objection appears to be that the Notice did not set forth in detail the amount of attorneys' fees and expenses requested by Lead Counsel.  *See, e.g.*, Ex. B, Schoeman Obj. at 1 ("The 'Notice' does not detail the alleged plaintiffs' counsel's fee nor does it detail the 'Litigation Expenses'!").  Had Mr. Schoeman simply read the Notice Order and waited for Plaintiffs' settlement briefing filed only weeks after his letter, however, he would have had the benefit of supporting materials for Lead Counsel's fee and expense request, which were also made available to Settlement Class Members on the public docket and settlement website.[5]  Lead Counsel also personally served the Opening Papers on Mr. Schoeman.  *See* ECF Nos. 250-254.[6]

---

[5]     Moreover, the Notice contains all of the information required by due process and Federal Rule of Civil Procedure 23.  *See* ECF No. 249 at ¶8 (finding form and manner of publication, mailing and distribution of Notices to "meet requirements of Rule 23 [], Section 21D(a)(7) of the Securities Exchange Act of 1934 [], as amended by the Private Securities Litigation Reform Act of 1995 [], 15 U.S.C. § 78u-4(a)(7), the Constitution of the United States, and any other applicable law, and constitute the best notice practicable under the circumstances").

[6]     It appears that Mr. Schoeman's overall objection lies not with the present Settlement, but with class actions generally.  Ex. C., Schoeman Obj. at 2 ("This is a matter now for the Congress to consider.  That is, the bringing of class action lawsuits that may or may not serve any public

Lead Counsel's submission sets forth ample support for the fee request, including extensive detail regarding the work performed by Lead and Liaison Counsel on behalf of the Settlement Class, as well as the request for reimbursement of expenses incurred in prosecuting and resolving the Action.  Lead Counsel's submission also demonstrates that the fees and expenses requested are appropriate given the quality and amount of work performed, the favorable result for the Settlement Class, and the applicable fee and expense jurisprudence.

Given Mr. Schoeman's lack of standing and his failure to substantiate his generalized complaints, his objection should be overruled.

### B.       The Brown Objection Should be Rejected

Mr. Brown objects to: (i) Lead Counsel's request for attorneys' fees; (ii) the *cy pres* provision contained in the Notice; and (iii) the overall fairness of the Settlement to the Settlement Class.  Ex. E, Brown Obj. at 1.  For the reasons discussed below, Mr. Brown's objections are meritless and should be overruled.

As an initial matter, it is worth noting that Mr. Brown is a known "professional" objector and has submitted similar unsubstantiated objections in several recent class actions.  *See* Ex. F, *In re Verifone Holdings, Inc. Sec. Litig.*, Case No. 3:07-cv-06140-EMC (N.D. Cal. Dec. 30, 2013) (ECF No. 334) (Ex. F) (objection overruled and noting "the intransigence of counsel for Mr. Brown to produce evidence of standing and counsel's last-minute decision to appear at the final fairness hearing even telephonically" (ECF No. 359) (Ex. G)); *In re Sanofi-Aventis Sec. Litig.*, Civil Action No. 1:07-cv-10279-GBD (S.D.N.Y. Dec. 16, 2013) (ECF No. 273) (Ex. H) (objection overruled (ECF Nos. 281 and 282) (Exs. I and J, respectively)); *In re SunPower Sec.*

---

purpose…."); Ex. D, Schoeman Obj. at 1 ("I have repeatedly received notices of this or that class action and have the same problem.  The matter is unintelligible and insufficient information is supplied...").  These abstract objections to well-established Rule 23 procedures are insufficient to undermine the fairness and reasonableness of the specific Settlement and fee request here.

*Litig.*, Case No. 09-CV-5473-RS (JSC) (N.D. Cal. June 12, 2013) (ECF No. 264) (Ex. K) (objection voluntarily withdrawn for lack of standing (ECF No. 265) (Ex. L)). "Federal courts are increasingly weary of professional objectors".  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003); *see also In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) ("professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").

Given Mr. Brown's history of filing unsubstantiated objections to class actions, it is not surprising that he failed to provide the information mandated by the Court's Notice Order regarding his prior objections to class action settlements over the past five years.  As set forth above, this history undermines the merit of his objection here.[7]  Even if Mr. Brown had complied with the Court's Notice Order, in light of his clear record as a professional objector, Plaintiffs respectfully submit that the Court should view his objection with appropriate skepticism. As summed up by the Court in *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006):

> [P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Id*. at *1.

---

[7]    Under the express terms of the Notice Order, therefore, Mr. Brown has "waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the Settlement as reflected in the Stipulation, to the Plan of Allocation or to the application by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses." *See* ECF No. 249 at ¶13.

1.    **The Requested Fee is Fair, Reasonable and Supported by the** *Goldberger* **Factors, the Settlement Class and Sophisticated Institutional Investor Plaintiffs**

As set forth in Plaintiffs' Opening Papers, the $52.5 million Settlement was only achieved through Lead Counsel's extensive efforts over the course of nearly three years of hard-fought litigation.  The Settlement was reached after the substantial completion of fact discovery and just prior to the parties' exchange of expert reports.  ECF No. 254 at ¶¶18-76.  In reaching this point in the litigation, Lead Counsel devoted substantial resources to investigating, prosecuting and ultimately resolving Plaintiffs' claims on a wholly contingent basis.  The requested fee ($12.6 million) is less than Plaintiffs' Counsel's aggregate lodestar of $12,912,708.50 and corresponds with the amount permitted under Lead Counsel's retainer agreement with Lead Plaintiff, negotiated at the outset of this Action.  Additionally, the fee request is fully supported by the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43 (2d Cir. 2000), and under the lodestar approach permitted by the Second Circuit. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Mr. Brown's cookie-cutter objection to Lead Counsel's fee request is based on unsupported assertions−many of which were raised by Mr. Brown prior (overruled) objections.

a.    **Plaintiffs Faced Substantial Risks in this Action**

Ignoring the extensive discussion of the results achieved and the risks attendant to this Action as provided in the Opening Papers (*see, e.g.*, ECF No. 254 at ¶¶88-96), Mr. Brown generally asserts that Lead Counsel "overstates the quality of the legal representation and complexity of the issues."  Ex. E, Brown Obj. at 2.  He further contends that "much of the investigative work [in this Action] was done by the [SEC and DOJ] before Lead Counsel became

involved" and that "Weatherford's restatements provided the information needed to make many of the allegations." *Id.* These assertions are meritless.

First, contrary to Mr. Brown's suggestion, the accounting and restatement claims here were especially complex—involving (i) technical tax accounting misstatements over the course of four fiscal years; (ii) complicated accounting for and tax treatment of "intercompany" dividends between dozens of foreign subsidiaries; (iii) varying degrees of "deficiencies" in tax controls under Sarbanes-Oxley (some of which may not require disclosure); (iv) the uncertain interplay between GAAP and tax reporting; and (v) a labyrinthine corporate tax structure based in Switzerland underlying all of the accounting and internal control issues in the case.

Second, the mere fact that a restatement occurred was no guarantee that Plaintiffs would succeed in proving (or even pleading) scienter—*i.e.* that the accounting corrections were the result of fraudulent intent, as opposed to negligence or mistaken accounting. Indeed, many cases involving restatements are dismissed at the pleading stage. *See, e.g.*, *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328 (S.D.N.Y. 2012); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398 (S.D.N.Y. 2007). Most importantly, this Court dismissed Plaintiffs' accounting and restatement claims in their entirety for failure to adequately allege scienter and rejected several attempts by Plaintiffs to revive those allegations. ECF Nos. 88, 103. Thus, the only surviving claims in the case were limited to Defendants' Internal Control Misstatements made by a single individual defendant, CFO Andrew P. Becnel. ECF No. 254 at ¶29. Mr. Brown's objection fails to even acknowledge the actual facts in this case, let alone explain why that record does not support approval of the Settlement.

Third, Mr. Brown's suggestion that Lead Counsel "relied heavily on work done by government attorneys" is unfounded. Mr. Brown does not provide any explanation of what

"investigatory work" was provided to Plaintiffs by the government.  Indeed, despite investigating Defendants' alleged conduct for over three years, neither the SEC or DOJ has brought a single charge or claim against Defendants based on the same restatement that Mr. Brown now submits "provided the information needed to make many of the [fraud] allegations."  Ex. E.,m Brown Obj. at 2.  Moreover, the mere fact that the SEC wrote Weatherford a letter asking questions about the restatement in March 2011—and failed to take action in the three years since—did not provide any meaningful advantage for Plaintiffs in alleging or proving fraud claims.

Lead Counsel's success here was achieved through three years of rigorous litigation, including seven motions to compel (all of which were granted in part) and the development and review of approximately 2.3 million pages of documentary evidence.  This evidence included materials and interview memos obtained only as a result of Plaintiffs' success establishing Defendants' waiver of privilege and work product protection—a result vigorously contested by two separate law firms representing Weatherford and its Audit Committee.   Simply put, Plaintiffs' success was not achieved because of the SEC's "investigative work," but rather, the Settlement represents the only current recovery for shareholders in light of the SEC's inaction. *See Goldberger*, 209 F.3d at 55 ("the quality of representation is best measured by the results").[8]

Finally, Mr. Brown's attempt to downplay the risk and complexity of this Action, and his conclusory assertion that the "risk of non-settlement" is "extremely low," is speculation based entirely on hindsight bias.  When Lead Counsel began prosecuting this Action, there was no guarantee that a successful result would be achieved; yet Lead Counsel invested significant time,

---

[8]      Mr. Brown made this same argument in *Verifone*, which was overruled.  *See* Ex. F, *Verifone* Obj. (ECF No. 334) at 2 ("Contrary to Class Counsel's assertions, proving the financial improprieties which resulted in artificially inflated stock prices and the later precipitous decline would not be difficult. Most information related to the price decline was publicly available and much of Class Counsel's hard work was devoted to reviewing documents provided by the Securities and Exchange Commission and the company's public filings.").

effort and out-of-pocket expenses to pursue the Settlement Class's claims and obtain a favorable recovery. Accordingly, Mr. Brown's unsupported generalizations regarding the risks in this case do not substantiate his Objection and should be rejected.

**b.      The Allocation of Work Performed by Lead Counsel in this Action is Reasonable**

Mr. Brown's attempt to trivialize the work performed by Lead Counsel's team of full-time staff attorneys is meritless and ignores the crucial and substantive work performed by those attorneys. Ex. E, Brown Obj. at 3-4. Here, the staff attorneys were integral members of the team that prosecuted this Action and contributed substantially to the outcome of the case, directly benefitting the Settlement Class. For example, Lead Counsel's staff attorneys, among other tasks: (i) reviewed and analyzed documents for varying degrees of relevance, participated in the preparation of weekly memoranda that summarized highly relevant documents, and typically attended weekly conference calls to discuss the status of the document review, deposition preparation, and other tasks; (ii) drafted legal and factual memoranda that were essential to analyzing the evidence and preparing for depositions and motion practice; (iii) discovered and addressed technical issues and substantive deficiencies in document productions; (iv) drafted factual memoranda summarizing the information gleaned from the highly technical and comprehensive internal investigation materials that Lead Counsel only received in full approximately a month before the close of fact discovery; and (v) assisted more senior attorneys in analyzing and determining which witnesses should be deposed and which documents should be utilized in connection with such depositions. *See* ECF No. 254 at ¶¶115-116. Further, the staff attorneys' review and analysis of the approximately 2.3 million pages of documents produced in this case was an enormous undertaking that was essential to Plaintiffs' ability to develop the evidence necessary to prosecute the complex claims asserted in the Action. Thus,

the staff attorneys' work significantly contributed to Plaintiffs' ability to obtain the proposed Settlement in this case. Mr. Brown does not advance a single argument that shows otherwise, and his speculation that anonymous "staff attorneys at the SEC" did the "bulk of the serious investigative and legal work" (Ex. E, Brown Obj. at 3-4) is not supported by any facts in the record. *See* Section II(B)(1)(b), *supra*. Nor does he provide any evidence supporting his assertion that Lead Counsel "relied heavily on that work in formulating the causes of action alleged, and used contract attorneys to inflate the fees charged in this manner." Indeed, the SEC has spent three years investigating the conduct at issue here and has not "formulat[ed]" a single "cause of action" for negligence, fraud or otherwise.

Mr. Brown's attack on the allocation of work performed by Lead Counsel to its team of staff attorneys in this Action is also unpersuasive. Ex. E, Brown Obj. at 3 (asserting that "most work was delegated to lower level attorneys" and that Lead Counsel "reli[ed] on staff attorneys for the bulk of the work."). Notably, Mr. Brown asserted precisely the opposite position in his recent objection in *Verifone*, suggesting that counsel's lodestar there was unreasonable because most of the billable time was incurred by ***senior-level*** lawyers rather than junior and staff-level attorneys. *See* Ex. F, *Verifone* Obj. at 8 ("Oddly, partner hours expended vastly exceed that of associates and other more junior attorneys. Seven partners billed 4,202.5 hours, for total billion of $2,784,730, while Associates only billed 419.05 hours – or less than ten percent of the total hours spent."). Mr. Brown's inconsistent and unprincipled position on this issue depending on which case he is objecting to illustrates that he would have objected to this Settlement regardless of the allocation of attorney hours. In any event, Lead Counsel believes its division of work was entirely reasonable and appropriate, especially for a case that proceeded deep into discovery and which was only a few weeks shy of the merits discovery deadline when it was resolved.

### c.   Lead Counsel's Staff Attorney Billing Rates in this Action are Reasonable

Given the extensive tasks performed, as described above, it is not surprising that the work performed by Lead Counsel's staff attorneys accounts for roughly 41% of Lead Counsel's total lodestar.[9]   However, Mr. Brown presumes that simply because the work was performed by staff attorneys, it must all have consisted of low-level, coding-type document review and thus, the billing rate for such work is inappropriately high.   In attempting to support his objection, Mr. Brown equates it to the situation in *In re Citigroup Inc. Securities Litigation*, 965 F. Supp. 2d 369 (2013), where, unlike here, no less than 30 contract attorneys were retained **after** the settlement was reached to engage in "confirmatory" document review.  *Id.* at 389-91.[10]

Furthermore, unlike in *Citigroup*, the attorneys at issue here are full-time staff attorneys, **not** contract attorneys.   Kessler Topaz's staff attorneys are W-2 employees, meaning that the firm pays FICA and Medicare taxes on their behalf, along with state and federal unemployment taxes and malpractice insurance.   In addition, Kessler Topaz's staff attorneys have access to the firm's benefits program, which provides for worker's compensation, health insurance, disability insurance, life insurance and a 401(k) matching program.   All staff attorneys working on this matter did so out of Kessler Topaz's main office and all of these attorneys have full access to secretarial and paralegal support, and participate in CLE programs and firm events offered by

---

[9]     To dramatize his position, Mr. Brown improperly suggests that 50% of the overall lodestar was spent on document review by including paralegals, investigators and other non-lawyer professionals along with staff attorneys in his calculation.  Ex. E, Brown Obj. at 3.

[10]     Mr. Brown's unsubstantiated assumptions and improper comparisons border on the frivolous.  Lead Counsel's staff attorneys have been an integral component of its team working on this matter since the outset of discovery and not a single hour of staff attorney time was included in the fee submission after the agreement-in-principle was reached.  ECF No. 254-5 at ¶6.  Thus, there was no confirmatory discovery whatsoever.  As a result, to suggest that there is a comparison to be made from a value creation standpoint between the staff attorneys here and the contract attorneys in the *Citigroup* matter is not well-reasoned.

Kessler Topaz.  Thus, the hourly rates charged for such staff attorneys include substantially more overhead and justify higher rates than for contract attorneys.[11]

Mr. Brown's further assumption that all of the work performed by the staff attorneys consisted of low-level document review is also baseless.  In this regard, Lead Counsel estimates that of the 13,480 total hours incurred by its team of staff attorneys approximately 40% of their time consisted solely of document review, ECF No. 254 at ¶118, whereas the remaining 60% of their hours consisted of the tasks described above, including identifying documents to utilize with particular witnesses at deposition, understanding and explaining the complicated intercompany tax system utilized by defendants to the attorneys taking the depositions.[12]

Putting aside Mr. Brown's assumptions about the degree or implied quality of work performed by the staff attorneys in this matter, his analysis of what impact this should have on the overall fee to be awarded by the Court also falls flat in light of previous multipliers approved by the Court.  In this respect, staff attorneys are billed by Lead Counsel at between $375-$395 per hour based upon their respective levels of experience (0-6 years at $375, 6+ years at $395). These rates have been accepted by this Court and numerous others in the district.[13]

---

[11]    It is also entirely appropriate to utilize contract attorneys in certain situations rather than staff attorneys, so long as they are billed appropriately to reflect the lower overhead accompanied by such retention or the reduced risk involved if they are only retained after a settlement in principle is reached, when confirmatory discovery is appropriate.

[12]    This is not meant to suggest that even pure document review is a low-level task in this type of litigation.  Given the limitations on depositions provided by the federal rules and the inability to have the same unfettered access to witnesses that defendants typically have, these cases are usually proven through these very same documents that objectors like Mr. Brown suggest should be given a low level of import by counsel.  In this case in particular, the documents themselves were instrumental to the critical motions to compel and thus, the document review in this matter was crucial to the overall success of the litigation.

[13]    Courts in this District and across the country have routinely granted fee awards to Lead Counsel based on lodestars which include a significant amount of staff attorney time at the same rates Lead Counsel has submitted here.  *See, e.g.,* Ex. M, Declaration of David Kessler, *In re Bank of America Corp. Sec., Derivative, & ERISA Litig.*, Master File No. 09-MDL-2058 (PKC)

Nevertheless, Lead Counsel submits that even at staff attorney rates of less than $375-$395 per hour,[14] the present fee request would still warrant approval.  For example, even if Lead Counsel was to charge an hourly rate as low as $200 per hour for the document review performed by staff attorneys, its resulting lodestar would be $11,887,878 (resulting in a multiplier of approximately 1.06 if the fee request was granted).  *See* Ex. P (chart of hypothetical staff attorney rates).  In fact, even if Lead Counsel eliminated entirely the 40% of its staff attorneys' total lodestar incurred for document review, its resulting lodestar would still be $10,790,368 (resulting in a multiplier of approximately 1.17 if the fee request was granted).  *Id.* In other words, even under unwarranted hypothetical scenarios for discounting or eliminating staff attorneys' document review lodestar, Lead Counsel's requested fee would still be well within the Circuit's accepted range of multipliers and in accord with this Court's most recent precedents approving multipliers ranging from 1.5 and 1.28 in various fee awards granted in connection with the *Lehman* director, officer and underwriter settlements (*see* Ex. Q, *Lehman* (ECF No. 970)) and the structured note settlement (Ex. R, *Lehman* (ECF No. 1393)), cases which involved extensive document review, but for which no hourly rate reduction was required.[15]

---

(S.D.N.Y. Feb. 15, 2013), ECF No. 829-13; Ex. N, Declaration of David Kessler, *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-MD-2017 (LAK) (S.D.N.Y. Mar. 8, 2012) ("*Lehman*"), ECF No. 807-13; Ex. O, Declaration of David Kessler, *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, Master File No. 09 Civ. 6351 (RJS) (S.D.N.Y. Oct. 7, 2011), ECF No. 148-8.

[14]     Mr. Brown's assertion that "billing rates should be based on the billing rates when [the] work was done" runs contrary to precedent.  Ex. E, Brown Obj. at 4.  *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *9 (S.D.N.Y. Nov. 7, 2007); *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S. Ct. 2463, 2469 (1989).  It is also irrelevant as Lead Counsel's staff attorney rates have remained constant for several years now.

[15]     *See, e.g., VISA*, 396 F.3d 96 at 123 (upholding multiplier of 3.5 as reasonable on appeal); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding fee representing 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier as "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re NASDAQ*

-14-

Simply put, Mr. Brown has selected the wrong case to trot out his well-tread argument about document review rates as it is unwarranted in these circumstances and largely irrelevant to the Court's overall analysis of an appropriate fee for the work performed in this matter.

2.   **The *Cy Pres* Provision Contained in the Plan of Allocation is Supported by Second Circuit Law and Prior Orders of This Court**

Although there is no evidence that any material *cy pres* issue will arise after distribution of the Settlement proceeds to the Settlement Class, Mr. Brown nevertheless objects to the *cy pres* provision contained in the Plan of Allocation as "impermissibly vague" because it does not precisely identify the potential *cy pres* recipients.   Ex. E, Brown Obj. at 5.[16]   This objection is unfounded.   The relevant provision (*see* Weatherford Notice at p. 11, ¶19) is substantial similar to *cy pres* provisions previously approved by this Court in *Lehman* (*see* ECF Nos. 1291 and 1350).[17]

---

*Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, and finding fee awards of 3 to 4.5 to be "common").

[16]     Mr. Brown's reliance on two decisions outside of this Circuit is misplaced. Ex. E, Brown Obj. at 5.  In *Dennis v. Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2011), a consumer class action, the Court reversed a decision approving settlement−comprised of a $2.75 million settlement fund and $5.5 million in food to a charity which had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved [*i.e.*, cereal consumers]."  In *Dennis*, unlike here, the identity of the *cy pres* recipients was material because the *cy pres* distribution was a substantive term of the settlement and not just a mechanism to distribute residual funds.  In *In re Airline Ticket Commission Antitrust Litigation*, 268 F. 3d 619, 626 (8th Cir. 2001), an antitrust case, the Court reversed a lower court's decision approving a *cy pres* distribution to Minnesota law schools and charities and remanded "to make a distribution or distributions more closely related to the origin of this nation-wide class action case concerning caps on commissions paid to travel agencies."  It is also worth noting that in *Dennis*, as is being proposed here, the settlement was approved without identification of potential *cy pres* recipients; *Dennis* concerned approval of a distribution motion.

[17]     In any event, there may be no need for a *cy pres* distribution in the first instance. Even if one ultimately is made, moreover, there is no requirement that a plan of allocation or notice identify specific potential *cy pres* recipients at this time. To the contrary, it would be unwise and impractical to attempt to identify an appropriate charitable organization now, when any potential *cy pres* distribution may not occur for several years, which is why it is standard practice in

As the Court in *In re American International Group., Inc. Securities Litigation*, 293 F.R.D. 459, 463 (S.D.N.Y. 2013) recently held in rejecting an identical objection to a securities class action settlement, "there [is] no legal authority to support the [objector's] argument; [and] no Court in this Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval." *Id.* at *3. To the extent any *cy pres* distribution is ultimately necessary, the recipient will be approved by the Court at that time, as is standard procedure in this Circuit.[18]

### 3.   Mr. Brown's Contention That the Settlement Improperly Favors Lead Counsel and the Settlement Class Representatives Over the Settlement Class Is Unsupported and Should Be Rejected

As set forth in Plaintiffs' Opening Papers, the Settlement provides a highly favorable result for the Settlement Class in light of the substantial risks to further litigation. ECF No. 254 at ¶¶88-96. Mr. Brown erroneously asserts that simply because there is what he calls a "quick pay" provision and a request for a PSLRA award for reimbursement of costs and expenses for the Settlement Class Representatives, the Settlement improperly favors Lead Counsel and the Settlement Class Representatives. This argument lacks any evidentiary support and is wholly conclusory. To the contrary, the protracted arm's-length negotiations; the role of Judge

---

securities class actions for lead counsel to propose *cy pres* recipients for the court's approval when (and if) they move for a *cy pres* distribution.

[18]    In connection with his objection to the *cy pres* provision, Mr. Brown also implies that the $10.00 *de minimis* payout provision contained in the Plan of Allocation is somehow improper. Ex. E, Brown Obj. at 4. A minimum payment threshold is a common and beneficial feature of allocation plans. The threshold benefits the class as a whole by eliminating payments to claimants for whom the cost of processing claims, printing and mailing checks and related follow up would be disproportionate in relation to the size of their claim. *See Global Crossing*, 225 F.R.D. at 463 ("[c]lass counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their de minimis amounts of relief"); *see also* Ex. S, *Lehman* (ECF No. 1227) (approving $10.00 threshold).

Weinstein, a respected mediator; the approval of two sophisticated institutional Plaintiffs; and

the proceedings before this Court all demonstrate the absence of any collusion or fraud.[19]   *See,*

*e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576-77 (S.D.N.Y. 2008); *In re Veeco*

*Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *5 (S.D.N.Y. Nov. 7, 2007) ("Moreover,

under the PSLRA, a settlement reached ... under the supervision and with the endorsement of a

sophisticated institutional investor ... is 'entitled to an even greater presumption of

reasonableness ....   Absent fraud or collusion, the court should be hesitant to substitute its

judgment for that of the parties who negotiated the settlement.'").[20]

---

[19]     Again, Mr. Brown's reliance on a Ninth Circuit case, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) is misplaced. Ex. E, Brown Obj. at 5.   *Bluetooth* involved neither a securities class action nor a common settlement fund.   Rather, the proposed settlement of the product liability claims provided for additional disclosures of safety information, a *cy pres* payment to non-profit organizations, and a payment of $800,000 in attorneys' fees to plaintiffs' counsel, which, if not approved by the Court, would **revert to defendants**.   Here, Lead Counsel recovered a $52.5 million common fund for the benefit of the Settlement Class and there is no possible reversion to Defendants.   Thus, the Ninth Circuit's concern that the class received **no monetary distribution** while counsel would "receive a disproportionate distribution of the settlement," simply does not exist here.   *Id.* at 947.   Finally, in *Bluetooth*, the Court was unable to perform a lodestar evaluation because the record failed to disclose information about counsel's hours and rates.   *Id.* at 943.   Here, detailed lodestar information was provided.

[20]     Mr. Brown's suggestion that the Settlement is unfair because Plaintiffs are "seeking an excessive payment of $25,000, besides any amounts they may recover based on the size of their claims" is unjustified.   Ex. E, Brown Obj. at 6.   Whether or not this Court ultimately approves the requested amounts to Plaintiffs here, the PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be granted to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).   Here, Plaintiffs−two sophisticated institutional investors−were actively involved in the prosecution and resolution of this Action.   Each of the Plaintiffs, among other things, reviewed material pleadings and briefs, gathered and reviewed documents in response to discovery requests and prepared and sat for Rule 30(b)(6) depositions.   *See* ECF No. 253 at §IV; *see also* ECF No. 254 at ¶¶139-140.   Lead Plaintiff AFME also appeared at the hearing on Defendants' motions to dismiss.   *Id.*   Accordingly, and as more fully addressed in the Opening Papers, Plaintiffs' modest request for reimbursement (totaling $19,935.69 in the aggregate) is fully justified.   *See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012 (awarding an aggregate amount of $71,910.00 to lead plaintiffs); Ex. S, *In re Satyam Computer Servs. Ltd. Sec. Litig.*, No. 09-MD-2027-BSJ, slip. op.

a.     The Timing of Payment of Attorneys' Fees Is a
Standard Term Approved by Numerous Courts,
Including This Court

As part of his contention that "Lead Counsel [] structured this settlement to elevate their

interest over those of the class," in his zeal to claim that the Settlement is unfair to the Settlement

Class, Mr. Brown characterizes the payment provision for attorneys' fees set forth at paragraph

16 of the Stipulation as a "quick pay" and claims that it is improper.  Ex. E, Brown Obj. at 6.

Mr. Brown completely overlooks the fact that the Court had already addressed this concern at the

preliminary stage of the settlement proceedings by confirming that the language "or at such later

date as required by the Court" was included in the provision so as to give the Court complete

discretion to delay the fee if necessary, in whole or in part, upon the Court's review of the

validity of the fee objections.  As addressed by Lead Counsel in a conference call with this Court

on February 19, 2014, this was the same language the Court previously approved in the *Lehman*

case.  *See* Ex. Q, *Lehman* at ECF No. 970.

Secondly, while Mr. Brown uses the derogatory term "quick pay" to describe the

payment of fees and expenses after entry of judgment, the term is a misnomer.  Lead Counsel has

been vigorously litigating this action since 2011 without any compensation, while advancing the

significant expenses necessary to achieve the substantial Settlement obtained through Lead

Counsel's efforts.   Courts across the country, including this Court, have approved similar

provisions regarding the timing of payments of fees.  *See* Ex. Q, *Lehman* (ECF No. 970).  *See*

*also*, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998)

("Numerous courts have directed that the entire fee award be disbursed immediately upon entry

of the award, or within a few days thereafter."); *In re Livingsocial Mktg. & Sales Practice Litig.*,

at 3-4 (S.D.N.Y. Sept. 13, 2011), ECF No. 365 (awarding an aggregate amount of $195,111 to
the class representatives).

No. 11-cv-0745, 2013 WL 1181489, at *21 n.25 (D.D.C. Mar. 22, 2013) ("There is ample authority for the 'quick pay' provision.") (collecting cases).

**b.      Mr. Brown's Reliance on *Eubank* to Assert that the Settlement is Unfair is Misguided**

The Seventh Circuit's recent opinion in *Eubank v. Pella Corp*, 2014 WL 2444388 (7th Cir. June 2, 2014) is easily distinguishable from the instant Action.  First, unlike in *Eubank*, where the product liability settlement was "claims made" (*i.e.*, the value of the settlement depended on the number and value of claims actually submitted) and subject to certain warranty and coupon provisions (the value of which was questionable), the Settlement Class here is entitled to the entire $52.5 million cash Settlement Amount plus income or interest thereon. Indeed, regardless of the number of claims submitted, the Settlement Class here is guaranteed to receive distribution of the entire Settlement Fund, less any Court-awarded fees and reimbursed expenses.   Lead Counsel has requested $12.6 million in attorneys' fees, reimbursement of $1,401,660.28 in expenses (which includes the amount requested by the Settlement Class Representatives), and approval of claims administration costs (currently incurred administration costs total approximately $1.1 million),[21] as well as minimal tax return preparation fees and taxes owed for interest earned on the Settlement Fund.   Further, under no circumstances will any amount of the $52.5 million cash Settlement Amount revert or be returned to Defendants.  *See* ECF No. 240-1 at ¶11.

Second, the settlement in *Eubank* suffered from facially troubling conflicts regarding adequate representation that simply do not exist here.  *Eubank*, 2014 WL 2444388, at *6-7.

---

[21]      The vast majority of GCG's costs to date reflect printing and postage expenses for the mailing of approximately one million Notices.  GCG was retained after a competitive bidding process involving three competing firms, and the fees and expenses incurred by GCG are being billed pursuant to terms provided at the outset of GCG's retention.

-19-

There, the lead class representative was lead counsel's father-in-law, and lead counsel replaced four additional class representatives when those non-familial class representatives disagreed with the proposed settlement. Those defrocked class representatives were the same parties that ultimately objected to the settlement, resulting in the Seventh Circuit's reversal of the district court's approval of settlement. Here, no such conflicts or adequacy issues exist and the original Court-appointed Lead Plaintiff (AFME) and additional named plaintiff and proposed Settlement Class Representative (Georgia Firefighters) have affirmatively endorsed the Settlement. *See* ECF No. 250. These sophisticated institutional investors are precisely the type of plaintiff representatives envisioned by Congress to lead, monitor and ultimately resolve, if appropriate, securities litigation under the PSLRA.

## III.  CONCLUSION

For the foregoing reasons and those set forth in the Opening Papers, Plaintiffs respectfully request that the Court overrule all Objections and: (1) approve the Settlement and Plan of Allocation; and (2) grant Lead Counsel's Fee and Expense Application.

Dated:  June 20, 2014                Respectfully submitted,

KESSLER TOPAZ
 MELTZER & CHECK, LLP


 */s/ Eli R. Greenstein*
ELI R. GREENSTEIN
STACEY M. KAPLAN
JENNIFER L. JOOST
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
(415) 400-3001 (fax)
egreenstein@ktmc.com
skaplan@ktmc.com
jjoost@ktmc.com

- and -

STUART L. BERMAN
DAVID KESSLER
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
(610) 667-7056 (fax)
sberman@ktmc.com
dkessler@ktmc.com

*Lead Counsel for Plaintiffs*

LAW OFFICES OF
  CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
(212) 986-0158 (fax)
ctrinko@trinko.com

*Liaison Counsel for Plaintiffs*

SAMUEL S. OLENS
Attorney General, State of Georgia
W. WRIGHT BANKS, JR.
Deputy Attorney General, State of Georgia
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
Telephone: (404) 656-3300
(404) 657-8733 (fax)

DARREN J. CHECK
Special Assistant Attorney General, State of Georgia
KESSLER TOPAZ
  MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
(610) 667-7056 (fax)
dcheck@ktmc.com

*Counsel for Georgia Firefighters' Pension Fund*

**CERTIFICATE OF SERVICE**

On this 20th day of June, 2014, I hereby caused a true and correct copy of the foregoing document to be served via Overnight Mail upon:

Stephen Schoeman, Ph.D.
101 Jefferson Avenue
Westfield, NJ 07090

Jeff M. Brown
750 S. Dixie Highway
Boca Raton, FL  33432


*/s/ Eli R. Greenstein*
ELI R. GREENSTEIN