# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WEATHERFORD INTERNATIONAL SECURITIES LITIGATION | 11 Civ. 1646 (LAK) (JCF) <br><br> CLASS ACTION |

## OBJECTIONS OF JEFF M BROWN TO PROPOSED SETTLEMENT

This settlement over compensates the attorneys at the expense of the class, rewards undefined *cy pres* recipients and is unfair to the class. Objector is a class member having purchased 100 shares of Weatherford International stock on September 13, 2010 for $16.429 per share. Proof of class membership is attached as Exhibit A; class membership is the only legitimate requirement for objecting.

### A. The Standard for Approving a Proposed Class Action Settlement

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2) "Because class actions are rife with potential conflicts of interest between Class Counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that Class Counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed Class Members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'" *Grant, citing In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986).

### B. The Fee Request is Improper

#### 1. *The fee request does not comply with the PSLRA*

The PSLRA requires that "total attorneys' fees and expenses awarded by the court to

1

counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). Out of a $52.5 million settlement, Lead Counsel are requesting fees of $12.6 million dollars, and litigation expenses of $1,381,724.59 (Dkt. 253. Page 7). The settlement documents, including the notice to the class, do not indicate how much of the settlement will be "paid to the class." The potential for high administration expenses, and the possibility that a large amount of this settlement will go to unnamed cy pres recipients, suggest that the amount eventually paid to the class will be substantially less than the difference between the fee award and the gross settlement. "To determine a reasonable fee. . .it is necessary to understand what counsel has accomplished for their clients, the Class Members. This can only be done when the expenses paid by the class are deducted from the gross settlement." *Teachers' Ret. Sys. V. A.C.L.N., Ltd.* 2004 U.S. Dist LEXIS 8608 at *20-*21 (S.D.N.Y. 2009); *accord. In re Initial Public Offering Securities Litig.*, 671 F. Supp. 2d 467, 514 (S.D.N.Y. 2009). To support their claim they are entitled to compensation drawn from the "fund as a whole", Lead Counsel cite exclusively to non-PSLRA cases. These cases are not dispositive in the securities litigation context.

### 2. *Lead Counsel overstates the risk of the litigation and complexity of the legal work performed*

Lead Counsel's analysis of the Goldberger factors, as set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), is flawed. This is not meant as a criticism of the attorneys themselves, but respectfully, Lead Counsel overstates the quality of the legal representation and complexity of the issues. Much of the investigative work was done by the Securities and Exchange Commission and the Department of Justice before Lead Counsel became involved. *See, e.g.*, Amended Complaint, ¶¶ 20, 21, 22, and 32. The Amended Complaint refers to several letters the SEC sent to Weatherford; Lead Counsel relied heavily on work done by government attorneys in determining the wrongdoing and the legal issues raised. Weatherford's restatements provided the information needed to make many of the allegations. Lead Counsel also overstate the risks of the litigation. Although there may be some uncertainty

regarding the future of certain aspects of securities litigation, such as the fraud on the market presumption they refer to the vast majority of securities litigation cases settle. Although plaintiffs risk losing on certain claims, the risk of non-settlement, particularly in a case involving a restatement, is extremely low. Lead Counsel's claims to support their large fee request should be viewed with skepticism.

### 3. *The bulk of the legal work was done by low paid contract attorneys*

Because of the legal and investigative work done by the SEC and the DOJ before Lead Counsel became involved, most work was delegated to lower level attorneys as confirmed by the billing information. Exhibit 1 ("Time Report") to the Declaration of David Kessler In Support of Lead Counsel's Motion for an Award of Attorneys' Fees (Dkt. 254-5) highlights Lead Counsel's reliance on staff attorneys for the bulk of the work. Exhibit 1 reveals that partner billing for this action, at $2,935,786.25, amounts to 23% of Lead Counsel's lodestar of $12,721,090.75 (Dkt. 254-5, page 2, ¶5). Partner billing ranged from $600 to $735 per hour, with the largest work being done by Eli Greenstein who devoted 2,542 hours to the action at a rate of $650.00, for total billing of $1,652,300.00. Associate billing, at rates between $375 and $395 per hour, for total billing of $3,496,324.25, amounts to 27.48% of the firm's lodestar. Combined, only half the firm's lodestar was done by associate or partner attorneys. Staff attorneys and support staff account for fully half of the lodestar. Total billing for staff attorneys amounts to $5,224,164.25, or 41% of Lead Counsel's lodestar. Billing by "professional support staff", including paralegals with billing rates between $200 and $250 per hour, amounts to $1,164,816.00, or 9% of Lead Counsel's lodestar. Based on Exhibit 1, the total number of attorney hours devoted to this litigation is 25,525.45. Of this number, partners devoted only 4,316.45 hours to prosecution, or 16.9% of the total hours, while associates devoted 7,728.65 hours, or 30.3% of the total hours. Staff attorney hours accounted to fully 52.8 % of total hours, billing a whopping 13,480.35 total hours. The disproportionate work done by lower-level staff attorneys reinforces the point made above – the bulk of the serious investigative and legal work on this case was done by staff

attorneys at the SEC. The firm relied heavily on that work in formulating the causes of action alleged, and used contract attorneys to inflate the fees charged in this manner.

Over-reliance on lower level attorneys, particularly inflation of contract attorney rates, was a key issue in *In re Citigroup Inc. Securities Litigation*, 965 F.Supp.2d 369 (2013), an important case decided within this circuit less than a year ago. In *Citigroup*, an objector argued excessive fees were being claimed for low-level contract attorney work; the objector pointed out contract attorneys were typically paid at rates between $20.00 and $45.00 per hour. Based on the objection and the court's own review, Hon. Sidney H. Stein of the District Court in the Southern District of New York, determined that the hourly fees requested for contract attorney work was too high, and accordingly reduced the fee for 45,300 hours of legal work, with the lodestar figure accordingly being reduced by $12 million – substantially benefiting the class. *In re Citigroup*, 965 F.Supp.2d at 398-399.

Close scrutiny of this fee application should include requiring disclosure by Lead Counsel what amount staff attorneys were paid. Although reasonable markup expected lawyers paid $40/hour should not be billed at $395. If staff attorneys were paid less than 10% of the rate claimed, suggesting Lead Counsel may be marking up their staff attorney rates by as much as 900%. This is unfair and unreasonable. Any markup should be acknowledged for what it is—a lodestar multiplier. The attorneys are not entitled to the fees based on inflated billing records. The class is entitled to know information on actually the type of work done by the staff attorneys and how much they were paid. Also, the billing rates should be based on the billing rates when the work was done. Kessler Declaration, ¶ 3 (stating the lodestar is based on 2014 billing rates).

### C. The settlement improperly rewards undefined cy pres recipients

Under the "Additional Provisions" section of the Class Notice, class members are informed that "If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation no distribution will be made to that Authorized Claimant." This is unfair to individual investors with smaller holdings of the company. As these investors mostly hold their stock through large brokerage firms, some distribution could no doubt

be made through their brokerage firm – which would not involve undue expense. The court cannot approve a settlement with unidentified *cy pres* recipients.

In *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987) the Second Circuit reversed a district court for failure to "designate and supervise" "the specific programs that will consume the settlement proceeds". It is not enough for Lead Counsel to state they will seek the court's approval of the cy pres recipients. The identity of *cy pres* recipients is a material term of the settlement and must be disclosed to the class. *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2011) (reversing where proposed charities had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved") *and In re Airline Ticket Commission Antitrust Litig.*, 268 F.3d 619, 626 (8th Cir. 2001) (reversing where there was geographic incongruity between location of class members and cy pres recipients). In an opt-out settlement, cy pres recipients should be identified prior to the objection and opt-out deadline. This would preserve class members' right to distance themselves from causes or institutions they do not wish to support. *Cf., e.g., Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (observing class members have the right not "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable") . This Court should follow the persuasive reasoning found in *Dennis* and related cases and disallow a *cy pres* provision that renders the settlement impermissibly vague.

### D. The settlement improperly favors the interests of Lead Counsel and class representative over those of the class

In *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 946 (2011), the court noted "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998), et al. The court observed, "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for

5

explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* The class is being certified for settlement only, and the court should be vigilant in its review.

These attorneys are seeking fees based on inflated lodestar figures and excessive staff attorney billing. The class representatives are also seeking an excessive payment of $25,000, besides any amounts they may recover based on the size of their claims. The class representatives also have an incentive to approve a settlement not fair to class members. The attorneys have indicated their own interests trump those of the class through the quick pay provisions in the settlement, which enable them to be paid long before class members receive any payout. Finally, these attorneys have not designated cy pres recipients, who may well be the recipients of a large percentage of the total settlement. These problematic aspects of the settlement suggest that the attorneys have favored their own interests over those of the class. The Seventh Circuit recently analyzed the danger posed by attorneys' favoring their own interests over those of the class in *Eubank v. Pella Corp.*, 13-2091, 2014 WL 2444388 (7th Cir. June 2, 2014). Justice Posner pointed out that in class action litigation "Class Counsel, ungoverned as a practical matter by either the named plaintiffs or the other members of the class, have an opportunity to maximize their attorneys' fees—which (besides other expenses) are all they can get from the class action—at the expense of the class. The defendant cares only about the size of the settlement, not how it is divided between attorneys' fees and compensation for the class." *Eubank*, at *2.

The payment procedures provide demonstrate that Lead Counsel have structured this settlement to elevate their interests over those of the class. Although class members may wait for months or longer to receive their payments, counsel will receive payment of their fees "immediately upon the District Court's order approving such attorneys' fees and litigation expenses." (Settlement Agreement, page 21, ¶ 16) If the award is reduced, counsel promise to pay the money back – but they will have use of the money in the interim. This provision enables the lawyers to be paid before the case has concluded, and before *their clients* are paid. This so-

called quick pay provision is an affront to Class Members and highlights how Lead Counsel are putting their own interests in front of those of their clients. This prompts another reference to *Eubank v. Pella Corp.*, 13-2091, 2014 WL 2444388 (7th Cir. June 2, 2014): Justice Posner observed:

> Enter the objectors. Members of the class who smell a rat can object to approval of the settlement. See, e.g., *Reynolds v. Beneficial National Bank*, supra, 288 F.3d at 287–88; Edward Brunet, "Class Action Objectors: Extortionist Free Riders or Fairness Guarantors," 2003 *U. Chi. Legal F.* 403, 411–12.

2014 WL 2444388 (7th Cir. June 2, 2014) at 5. This eye-brow raising provision disincentives Lead Counsel from conscientiously attending to the claims administration and funds distribution process – and divorces Lead Counsel's interest from those of the class. Lead Counsel should be paid only after the settlement fund is available to the Class.

### E. Joinder in Other Objections

This objector joins in and adopts all other objections not inconsistent with these arguments.

## Conclusion

For the foregoing reasons and all others presented at oral argument, this objector requests that the court sustain the objections and grant the following relief:

- Upon proper hearing, sustain these objections.
- Enjoin any payment to Lead Counsel until the settlement approval and judgment become final and the funds are also available to the class.
- Enter such other orders necessary alleviate other unfairness, inadequacies and unreasonableness of the settlement.

June 12, 2014

Jeff M. Brown
750 S. Dixie Highway
Boca Raton, FL 33432
Phone: (561) 395-0000
JBrown@lavallebrown.com

7

MorganStanley
SmithBarney

Individual Retirement Account

December 1 - December 31, 2011

Ref: C0021411 00185704

JEFF M. BROWN

Account number ▓▓▓

## Money fund

An investment in a money market fund is neither insured nor guaranteed by the FDIC or any other government agency. Although money market funds seek to preserve the value of your investment at $1.00 per share, there can be no assurance that will occur and it is possible to lose money should the fund value per share fall. Moreover, in some circumstances money market funds may be forced to cease operations when the value of a fund drops below $1.00 per share. In that event, the fund's holdings would be liquidated and distributed to the fund's shareholders. This liquidation process could take up to one month or more. During that time, these funds would not be available to you to support purchases, withdrawals, and if applicable, check writing or ATM debits from your account.

| Number of shares | Description | Current value | Accrued dividends | Annualized % dividend yield | Anticipated Income (annualized) |
|---|---|---|---|---|---|
| ▓▓▓ | ▓▓▓ | ▓▓▓ | | ▓▓▓ | ▓▓▓ |

## Common stocks & options

Citi Investment Research & Analysis (CIRA), Morgan Stanley & Co. LLC (Morgan Stanley) and Standard & Poor's equity research ratings may be shown for certain securities. All research ratings represent the "opinions" of the research provider and are not representations or guarantees of performance. Because the applicable research report for each company contains more complete information regarding the analyst's opinions, analysis, and rating, you should read the entire research report and not infer its contents from the rating. Where a particular company is covered by both CIRA and Morgan Stanley, you can and should view both research reports. CIRA's equity research ratings are (1) (Buy), (2) (Neutral) and (3) (Sell). For ease of comparison, Morgan Stanley and Standard & Poor's equity research ratings have been normalized to a 1 (Buy), 2 (Hold), and 3 (Sell). Please refer to the end of this statement for a summary guide describing CIRA, Morgan Stanley and Standard & Poor's ratings. Morgan Stanley Smith Barney does not take responsibility for, and does not guarantee the accuracy, completeness, or timeliness of research prepared by Standard & Poor's.

| Quantity | Description | Symbol | Date acquired | Cost | Share cost | Current price | Current value | Unrealized gain/(loss) | Average % yield | Anticipated Income (annualized) |
|---|---|---|---|---|---|---|---|---|---|---|
| 100 | WEATHERFORD INTERNATIONAL LTD.-CHF | WFT | 09/13/10 | 1,642.91 | 16.429 | 14.64 | 1,464.00 | (178.91) LT | | |
| 100 | Rating:Citigroup:1 Morgan Stanley:1 S&P:1 | | 03/03/11 | 2,114.99 | 21.149 | 14.64 | 1,464.00 | (650.99) ST | | |
| 200 | | | | 3,757.90 | 18.79 | | 2,928.00 | (829.90) | | |

"EXHIBIT A"